KING v. ANN ARBOR RAILROAD CO.

1. Negligence—Contributory Negligence—Question for Jury.
   In an action against the owner of a steamboat for negligently killing a laborer by collision with a dock, evidence examined and *held* to make a proper case for the jury.

2. Same—Instructions—Weight of Testimony.
    Instructions in an action for wrongful death examined and
        *held* prejudicial as on the weight and effect of the evidence.

Error to Benzie; Chittenden, J. Submitted June 14, 1904. (Docket No. 20.) Decided September 13, 1904.

Case by Elfa H. King, administratrix of the estate of Sheridan J. King, deceased, against the Ann Arbor Railroad Company for the alleged negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*T. W. Whitney* (*Alexander L. Smith*, of counsel), for appellant.

*D. G. F. Warner* and *Charles A. Withey*, for appellee.

Moore, C. J. This cause comes into this court on a writ of error to reverse a judgment rendered in favor of the plaintiff for damages for wrongfully causing the death of the plaintiff's husband, Sheridan J. King.

The accident by which Mr. King came to his death occurred on the 26th day of June, 1902, at Frankfort. The accompanying plat will help understand the situation.

It is the claim of plaintiff and admitted by defendant that instead of the boat getting out as far as "F" it was midway between "E" and "F." The defendant company has its terminus at Frankfort. The harbor consists of a small lake, known as "Lake Betsey," connected with Lake Michigan by a channel about 200 feet wide between parallel docks. This channel runs nearly east and west. At the easterly end of the northerly pier it is built at right angles, and extends northerly several hundred feet, bordering upon Lake Betsey, furnishing a landing place for passengers for a large hotel. At the easterly end of the northerly dock or pier there is at a short distance from the face of the dock a clump of piles not connected with the

dock. These piles are loosely bound together by a chain,
and are called "fender." piles. They are designed to pro-
tect the corner of the dock, and also vessels approaching

A - BOAT HOUSE WHERE KING WAS WORKING.
B - LOCATION OF LADDER.
C - CLUMP OF FENDER PILES
D - SMALL ROW BOAT .
E - POSITION OF CAR FERRY AT LANDING
F - POSITION OF CAR FERRY WHEN
      STARTING FOR PIERS

the corner of the dock, from injury. The dock is a sub-
stantial timber structure about five feet above the water
line. There is just about at the water line a 10-inch timber
extending out from the dock, forming a ledge upon which

a man can stand or walk. In passing around the corner of the dock on this ledge a man would pass between the spring piles and the face of the dock. These piles extend some 4 or 5 feet above the level of the pier. Just before the accident Mr. King had been engaged in painting a small shed belonging to the government which stood on the pier about 15 feet from its easterly end, and within 14 inches of the channel side. He had rowed over from the south side in the morning in a small rowboat belonging to the United States government, in whose employ he was, and had tied his boat to the foot of a small ladder on the east end of the dock. The ladder is made of 2x4 pieces nailed to the face of the dock with four cleats for crosspieces. In tying this boat Mr. King passed the rope between the clump of piles and the dock. The rowboat was riding out into the water of the channel. One of the defendant's car ferries had been stopped at the hotel dock. It was then backed out into Lake Betsey. She was in charge of Capt. Robertson, who was on the pilot house, about the center of the boat, and 20 feet from the side. When his vessel was about 200 feet from the corner of the dock Capt. Robertson called out to the men on the dock, "Somebody pull that boat in out of the way;" or, "Get that boat out of the way." There were at the time one or two other men on the dock besides Mr. King. The latter heard the call, got down from the building he was painting, and walked east toward the end of the dock. When he arrived at the top of the small ladder, he turned, backed down the ladder, and stooped down to untie the rope. In so doing he leaned against the spring piling, and he was in this position when the large vessel struck against the piling, and he was killed. Suit was brought, with the result already indicated.

It is claimed the court erred in submitting the case to the jury, for the reasons:

1. That there is no evidence fairly tending to show

any negligence on the part of defendant of any duty owed to the deceased.

2. That King was himself guilty of negligence proximately and directly causing his death.

The counsel are not agreed as to what the record shows. It is the claim of counsel for plaintiff that while the boat was 200 feet away, and still backing, or at a standstill, and certainly before beginning to move forward, the captain commanded the removal of the small boat, and that from then on he paid no attention to the man who obeyed his order. It is the further claim that Mr. King obeyed the order in the only way that it could have been done; that to untie the rope he needed to stoop down facing the dock, and, on account of the narrowness of the ledge, steady himself against the piles; and that while he was doing so he was in plain view of the captain, who, if he had looked, would have seen he was in a place of danger. It is his further claim that both Mr. King and the captain were familiar with the situation, that there was plenty of room in the channel to take the boat out without striking the piles, and if the big boat was so taken out the little boat would be in the way, but if the big boat was so steered as to strike the fender piles the little boat would not be in her way, and, this being the situation, Mr. King, as a reasonably prudent man, had a right to expect the boat would be kept away from the fender piles, and to do what he did, and that he would not have been in an unsafe place had it not been for the negligence of the captain. On the other hand, it is claimed the large boat was coming forward when the order was given, that any one could see she would strike the fender piling, and that any one would know, if he were between the fender piling and the dock, that he was in a place of great danger. It is also claimed the captain had no reason to suppose any one would undertake to do what Mr. King did; that he was not in a position to see Mr. King. They further claim, using the language of counsel:

"It seems too plain for argument that King was guilty

of the grossest carelessness. He knew all the circumstances of the situation — of the approaching car ferry. If he did not know that it would actually strike the piling, he certainly knew that it was liable to do so. And with this knowledge he deliberately turns his back to the approaching ferry, and then gets between the piles and the dock, and is killed. Such negligence is simply inexcusable. If he had glanced over his shoulder, he could have saved his life by a step. Or did he miscalculate the force of the impact? Who shall say?"

We think there was evidence in the case in support of each of these theories, and that the court could not properly withdraw the case from the jury.

Error is assigned in relation to the charge of the court. The defendant asked the court to give his third request to charge, which was as follows, except the words in the parenthesis being omitted:

"I further charge you that if Mr. King knew that the car ferry was approaching the corner of the pier when he got down on the ledge of timber at the bottom, and that he did not look to see whether the car ferry was liable to strike the piling (but carelessly and negligently, and without using ordinary care), placed his body between the piling and the pier just before the ferry boat struck the piling, and that if he had not gone into that place he would not have been killed, then the verdict should be for the defendant, even though the jury also find that those in charge of the boat were negligent in allowing the boat to strike the fender piling."

The court modified it by inserting the words in the parenthesis. This request, as originally prepared, met a phase of the case contended for by defendant in relation to which they have offered evidence.

The court also charged the jury:

"Third. I charge you, as a matter of law, and wish you to understand it, that it is the duty of all persons, the defendant railroad company no more and no less than any one else, to so use and manage their property as not to unnecessarily injure others. This rule is general, and applies to defendant in this case. Those in charge of the boat ordered or requested leaving a place of safety for the

purpose of moving the boat out of the way of the transport. The defendant knew that if they ran against the spring pile when Mr. King was between it and the dock they might kill or injure him, and, knowing where he was likely to be, and the dangers incident to what he was doing, if the transport struck the spring pile, it was the duty of the defendant, by its servants in charge of the transport, to use all reasonable diligence not to bring Mr. King into any unusual or unnecessary danger, and to keep away from the spring pile when he was near it, and until he was out of danger.   *   *   *

" *Fourth.* I further charge you that the fact that the plaintiff's husband was not working for the defendant will not defeat her recovery, because the railroad company, when it requested the removal of the rowboat, knew of the situation, and was in plain view of the surroundings, and the situation Mr. King was in, and owed to him the duty of all reasonable care on the part of those in charge of the boat to prevent injury to said King while he was carrying out their request. And the fact that the channel upon the waters of which the rowboat was then riding was a public highway does not release the defendant from the responsibility and duty of using due diligence and care in the premises."

In giving these requests the charge substantially told what the weight and effect of the testimony was. This should be left to the jury.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.