STETSON v. MACKINAC TRANSPORTATION CO.

1. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.
    Evidence that plaintiff, who claimed to be in defendant's
    employ in the engine room of a ferry boat, was ordered
    to make the boat fast to the dock, and in doing so he
    was caught by the cable, and, as defendant contended,
    because of the ordinary tightening of the same, he was
    struck and injured, plaintiff testifying that the accident
    was caused by the starting of the engines before he had
    time to get out of the way, held, to present issues of fact
    for the jury as to the existence of the relation of master
    and servant and the claim of negligence.

2. WITNESSES—EVIDENCE—MATTERS EQUALLY WITHIN KNOWLEDGE
    OF DECEASED AGENT—CORPORATIONS.
    Before evidence concerning instructions which were given
    plaintiff by a deceased officer of defendant corporation
    could be excluded from the record as equally within the
    knowledge of deceased, it must be made to appear that
    the testimony and facts were not within the knowledge
    of any surviving officer or agent, within the express con-
    ditions of section 10212, 3 Comp. Laws (5 How. Stat.
    [2d Ed.] § 12856).

3. DAMAGES—EXCESSIVE VERDICT—NEW TRIAL.
    Held, also, that $5,000 was not an excessive verdict for the
    paralysis and substantial loss of use of plaintiff's leg,
    accompanied by severe pain; his earnings having amounted
    to $45 per month and board, plaintiff being about 34 years
    of age.

Error to Cheboygan; Sharpe, J. Submitted April
16, 1914. (Docket No. 48.) Decided October 2,
1914. Rehearing denied December 19, 1914.

Case by Don C. Stetson against the Mackinac
Transportation Company for personal injuries.
Judgment for plaintiff. Defendant brings error.
Affirmed.

*James H. Campbell,* for appellant.

*C. S. Reilley,* for appellee.

MOORE, J. This is a personal injury case. From a judgment of $5,000 in favor of the plaintiff, the case is brought here by writ of error.

The plaintiff was employed in the engine room of a steam ferry boat 400 feet long and 90 feet beam, used to transfer loaded railroad cars and engines across the straits of Mackinac. The plaintiff was coming from his home to the dock to go to work upon the boat, at 12 o'clock noon. When he got to the dock, which projects into the waters of the straits several hundred feet, the boat was coming across the straits. The boat came to the dock headed north, with its side to the east end of the dock. It was desired to shift her position so that the side would be on the south side of the dock with her stern toward the land. To accomplish this a steel cable 1½ inches in diameter, with a loop in the end of 5 to 8 feet, was passed through a chock hole in the side of the boat about 10 or 12 feet above the water. Attached to the loop was a heaving line 50 feet or more in length. The other end of the cable was wound around a capstan in the boat operated by a steam engine.

It is the claim of the plaintiff that the heaving line was thrown to him by those in authority over him on the boat, they at the same time calling out to him to throw the loop over a large cleat in the dock; that he did so, and before he could get out of the way the engines of the boat were started, the cable was drawn taut, and he was struck by it and was severely hurt.

It was the claim of the defendant that there was no force applied to the cable except to start the capstan in motion.

The other claims will be considered in connection with the discussion of the errors assigned.

The first assignment discussed is stated by counsel as follows:

"The defendant contends that the evidence does not sustain the charge of negligence of the defendant; that the evidence is conclusive to the contrary; and that a verdict should have been directed for the defendant.

"The plaintiff is not entitled to recover, except upon the ground that after the cable had been placed upon the cleat the boat was, by the action of the employees of the defendant in charge of it and by the application to the boat of her steam power, by the operation of her engines, propelled ahead with great speed and headway causing the cable to tighten and spring up so as to strike the plaintiff."

The argument of appellant is based upon the theory that the only pull made upon the steel cable was by revolving the capstan. It is true this was the claim of defendant and its witnesses, but, as before stated, plaintiff claims, and there is testimony to support the claim, that the engines of the boat were started and there was no opportunity for the plaintiff to get out of danger. This raised an issue of fact which was properly submitted to the jury. See *Butterfield* v. *Arnold,* 131 Mich. 583 (92 N. W. 97); *King* v. *Railroad Co.,* 137 Mich. 487 (100 N. W. 783).

The second assignment of error is stated by counsel as follows:

"The plaintiff himself was guilty of negligence in going on the dock and between the warehouse and the dock while the operation of moving the large steel boat to the side of the dock by means of the cable was in progress. He had nothing to do there. His duties were on the boat, and did not begin until 12 o'clock, an hour or two later than the time of the accident. An effort was made to claim that he was in the employ of the defendant while on the dock idling there with a number of others, because when the line attached to the cable was thrown onto the dock the mate from the deck asked him to haul it up, and he did so. He did nothing else, and was not asked to do anything else.

He did not put the line onto the cleat or assist in doing it, and testified that he was not within 50 feet of the cleat at any time. He should not have remained between the warehouse and the dock and in a place of danger, and was clearly negligent in so doing."

An elaborate argument is made under this head in the printed brief by counsel for appellant.

On the part of the plaintiff it is said:

"There is no question of contributory negligence in the case, as it appears that the defendant had not elected to come within the provisions of Act No. 10, Public Acts of Michigan, Extra Session 1912, known as the compensation act, and said defendant, not having elected to come within the provisions of said act, lost its right to defend on the ground of contributory negligence."

Upon the oral argument in this court counsel for appellant stated that, if the plaintiff was in the employ of the defendant when the accident occurred, his argument under this head had no force. That question was left to the jury, who found, and there was testimony to support the finding, that plaintiff was in the employ of defendant when the accident occurred. This makes it unnecessary to discuss this phase of the case further.

We again quote from brief of counsel:

"Error was committed in the refusal to exclude plaintiff's testimony as to instructions as to his duties given him by Walsh, defendant's engineer, deceased at the time of the trial. *  *  * The statute (3 Comp. Laws, § 10212, as amended 1903, Act No. 30, p. 36), contains the provision that 'when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matter which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation.' "

Counsel for appellee meet this objection by saying:

*First,* that when the testimony was admitted it was not shown by the record that Mr. Walsh was dead; *second,* that he was not such an officer or agent as to bring the case within the statute; and, *third,* that the record does not disclose that the matter about which testimony was given was not within the knowledge of any surviving officer or agent of the corporation.

As we think the last point is well taken, we think it unnecessary to express any opinion upon the other two.

We again quote from the brief of counsel for appellant:

"The questions on cross-examination by plaintiff's counsel to Capt. Robertson, who was in charge of the boat at the time of the accident, as to accidents on former occasions caused by boats of which he had charge, were improper and prejudicial.

"These questions appear in the cross-examination of Capt. Robertson, called as a witness by defendant. He was asked whether, while he was on the Ann Arbor transfer boat (in 1901 or 1902), a man by the name of King was killed, also whether in June, 1902, when his boat was in the channel, he ran her into a skiff, and a man in the skiff was crushed and killed, and further questioned as to the circumstances and as to what the jury found. The impropriety and prejudicial effect of such questions as those in the presence of a jury is manifest, and the judgment should be reversed because of them, if for no other reason."

An examination of the record shows that defendant examined Capt. Robertson at great length as to length of his service and experience, presumably to show his capability as a vessel captain.

The questions to which exceptions are taken came out upon the cross-examination without interruption or objection from counsel, when the following occurred:

"*Q.* Well, the claim was made, wasn't it?
"*A.* I guess it was made; yes.
"*Q.* And the jury—

"*Mr. Sprague* (interrupting) : .I object to that as incompetent, irrelevant, and immaterial. Improper cross-examination.

"*The Court:* I am inclined to think it is prejudicial,. Mr. Reilley. I sustain the objection.

"*Mr. Reilley:* Give me an exception."

It will be observed that the objection made by counsel for appellant was sustained and that the exception was taken by counsel for appellee. The situation does not call for discussion.

But one other group of assignments of error require discussion, though all the other assignments of error have been examined. We again quote from the brief of counsel:

"There was error in overruling the second ground of the motion for new trial that the verdict was excessive. The amount of the verdict was $5,000, and there is nothing in the evidence which warrants any such award."

The plaintiff was but 34 years old. He was earning $45 a month and upwards, and his board. There was testimony tending to show an injury that caused great pain and suffering and that at the time of the trial plaintiff had practically lost the use of one of his legs, and was compelled to use either a cane or a crutch constantly:

One of the doctors testified in part:

"All the muscles in the left leg seem affected. It amounts to partial paralysis. You can't swing the leg around for the different motions that he has in the other leg. It is my determination that he has partial paralysis of the left leg."

"There seems to be a loss of nerve conductivity in the leg. It fails to respond to electric stimuli, except pressure on the leg. If he presses anything he can feel that, but you put the battery on that and the muscles or nerves don't react, nor does he feel it, while on the other leg he does."

The trial judge had the great advantage of seeing

the physical condition of the plaintiff, and we are not inclined to reverse his action in overruling the motion for a new trial, based upon the claim of an excessive verdict.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.