VAN DRIEL v. STEVENS.

1. MASTER AND SERVANT—PERSONAL INJURIES—COURSE OF EMPLOYMENT—QUESTION FOR JURY.
    In an action for personal injuries by an employee, who had been engaged to assist in filling two silos, received from a fall from a defective ladder leading up to a chute to the top of the silo, where plaintiff, who had been temporarily employed in sharpening a set of knives to be used in the machine, unknown to the employer entered the chute and climbed to the top of the ladder to see if his help was needed in completing the filling of the silo, when he fell and received the injuries sued upon, the question as to whether he was acting within the scope of his employment' was properly for the jury, under proper instructions.

2. SAME—EVIDENCE—SELF-SERVING TESTIMONY.
    Testimony of plaintiff as to his reasons for climbing the ladder was not objectionable on the ground that it was self-serving; its weight being for the jury.

3. SAME—DAMAGES—PERMANENT INJURIES—EARNING CAPACITY.
    Where the testimony of the physician showed that plaintiff's injury was of a permanent character, it was not error for the trial court to submit to the jury the question of his decreased earning power, although he testified that, because wages had gone up, he was able to earn, at lighter work, the same wages he received before the injury.

4. APPEAL AND ERROR—CONDUCT OF COURT—TRIAL.
    Language of the trial court, which, if used in the presence of the jury, would have been open to serious objection, held, not prejudicial where the jury were not present when it was spoken.

Error to superior court of Grand Rapids; Dunham, J. Submitted January 23, 1918. (Docket No. 168.) Decided March 27, 1918.

Case by Cornelius Van Driel against Harry Stevens for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. C. Hindman* (*Ganson Taggart*, of counsel), for appellant.

*William J. Landman* (*Fred P. Geib*, of counsel), for appellee.

In this case plaintiff sues to recover damages sustained by him through a fall from a ladder leading up a chute to the top of a silo. The silo was 28 or 30 feet high and held together by iron hoops 30 inches apart. On one side of the silo an opening 28 inches wide was left from bottom to top. As the filling progresses this opening is closed by small doors 28 inches wide and 30 inches high, which fit into a frame-work prepared for them and are held in place by two short levers, one on either side, fixed by a bolt near the outer edge of the door. Upon the outer end of these levers is an eccentric flange so that when the lever handles are upright the flange does not engage with the frame work of the silo. When in proper position and pushed downward the eccentric flange presses firmly against the frame and the door is held in a fixed position. When so adjusted the ends of the levers or handles are in a horizontal position nearly touching each other in the center of the door, and they, together with the iron hoops, afford a safe and convenient sort of ladder upon which to mount the silo. If these doors be placed in position upside down the handles of the levers when not engaged would hang downward, and, in order to perform their service, would have to be raised upward to a horizontal position and when in that position the door would be held in place but the handles when subjected to any considerable weight would be liable to drop from a horizontal to a perpendicular position. The whole opening was protected by a chute which extended below the surface of the ground to the basement of the barn near which the silo was erected.

Plaintiff was hired by defendant on October 4, 1915, to assist in cutting and hauling corn and to help fill two silos. He continued to work with the exception of a day or two until October 16th, when he was injured. During these 10 or 12 days plaintiff cut corn, hauled corn, dug potatoes one day, and helped tramp down the ensilage in the larger silo which was filled first. During the operation of the filling of the larger silo plaintiff's son for a time tramped the ensilage but made complaint to his father who thereupon changed work with him. This silo was filled without incident. The smaller silo which was only 10 feet in diameter was then filled and the tramping was done therein by plaintiff's son. On the day of the accident, plaintiff had been hauling corn from the field to the machine and between 2 and 3 o'clock had delivered his last load; 1 or 2 other loads remaining in the field were being drawn by other teams. A conversation ensued between plaintiff and defendant with reference to the sharpening of a set of knives to be used in the machine, and plaintiff was either directed or permitted to do said sharpening. He took the knives inside the barn, where, with the assistance of a younger son, he sharpened them. While engaged in this labor he was not in view of the defendant. Having completed the job, without reporting to defendant, his employer, he proceeded to the basement of the barn and there entered the chute and climbed to the top of the ladder above described. It was quite dark within the chute. All the doors of the opening, with the exception of the lowest one, had been placed upside down. The last door when placed left an opening only about eight inches high. Learning that the job within the silo was nearly complete, plaintiff attempted to descend, when the handles on the 3rd door from the top, upon which he was standing, dropped down, throwing his weight upon the handles of the top door which he held

in his hands. These likewise dropped downward. He lost his hold and was precipitated to the bottom of the chute, somewhat seriously injuring both ankles. Asked to describe the accident, plaintiff said:

"I go in there and go up to ask my boy if I can do anything for him up there, and I go up there and talk with him, and he says: 'Well, up here we got it finished here pretty near; better go down and pick up the tools, that we don't have to go home so late at night; we have to move yet.' * * *

"Q. What were you going up there in that silo to do?

"A. To help him, if he needed any help, to help him; otherwise to see how far it was before we get done."

At the time of the accident there remained only 15 or 20 minutes' work before the filling of the small silo was completed. Upon completion of this job it was the purpose of the defendant to move his machine to the premises of a neighbor where the work of filling the neighbor's silo was to commence the next morning. Plaintiff was to participate in that labor but it is disputed whether in so doing he should become the employee of the neighbor or remain the employee of the defendant.

At the close of the plaintiff's testimony, and at the conclusion of defendant's case, a motion for a directed verdict was made upon the grounds:

"1. That at the time of the accident the plaintiff was not acting within the scope of his employment or in the line of his duty.

"2. Because at the time of the accident, the plaintiff was going about the premises for his own pleasure or convenience or curiosity.

"3. Because the plaintiff at the time of the accident was not going to any place where his duty called, nor for the performance of any of his duties, but that he had left his work and place, and gone to another part of the premises for his own purposes and was injured at a place, and at a time when he was not acting for or on behalf of the defendant, nor in pursuance of any order or direction given him by the defendant, and was

not upon a place of said premises fitted up or intended for his amusement, pleasure, or recreation, or for that of any other person.

"4. Because at the time of the accident the doors were all in, and that there was no opportunity for any further work to be done. The obligation of master and servant had, so far as this particular work at that time was concerned, ceased, and the obligation of the master to maintain a safe place to work at that time had been ended."

This motion was denied and the case was submitted to a jury who found for the plaintiff in the sum of $1,926.40. Upon a former trial, plaintiff had recovered a verdict of $4,341. Upon motion for a new trial the motion was granted unless plaintiff should remit all of said judgment except $841, which he declined to do. Following the second verdict a motion for a new trial was made which was denied.

BROOKE, J. (*after stating the facts*). In this court, in addition to the four reasons for a directed verdict which may be considered together, defendant urges as ground for reversal alleged errors in the admission and exclusion of testimony; alleged errors based upon the conduct and language of the court in the progress of the trial; and alleged errors in the charge of the court.

We will first examine the assignment of error based upon the refusal of the court to direct a verdict in favor of the defendant upon the ground that at the time of the accident, plaintiff was acting without the scope of his employment and for his own pleasure and convenience. It is strenuously urged on behalf of the defendant that plaintiff's own testimony as to his reasons for mounting the ladder, "to help him, if he needed any help, to help him; otherwise to see how far it was before we get done," is a plain admission that his purpose was one of curiosity merely and was not inspired in a natural way by a desire to serve

his master.  In connection with this claim counsel
notice that the work of filling the small silo was nearly
completed; that it could have been completed no faster
if the plaintiff had been able to assist his son as only
such ensilage could reach the silo as was put through
the machine, and also that plaintiff mounted the lad-
der without any fork, which, it is claimed, would have
been necessary to enable him to perform any service
of value within the silo.  Many cases are cited by
counsel for defendant which it is claimed support the
position taken.  Among them the following: *Spooner*
v. *Detroit Saturday Night Co.*, 187 Mich. 125; *Lind-
strand* v. *Delta Lumber Co.*, 65 Mich. 261; *Kinney* v.
*Onsted*, 113 Mich. 98; *Hutchinson* v. *Cleveland-Cliffs
Iron Co.*, 141 Mich. 346; *Bedell* v. *Berkey*, 76 Mich.
435; *Brinkman* v. *Zuckerman*, 192 Mich. 624; *Rayner*
v. *Furniture Co.*, 180 Mich. 168; *Stetson* v. *Trans-
portation Co.*, 182 Mich. 355; *Clem* v. *Chalmers Motor
Co.*, 178 Mich. 340; *Gavigan* v. *Railway Co.*, 110 Mich.
71.  Upon this point the court declined to hold, as a
matter of law, that plaintiff in mounting the ladder
was acting without the scope of his employment, but
instructed the jury that whether or not such act was
within the scope of his employment was a question
of fact for their determination, saying:

"He must prove that at the time he went up that
ladder he was still a servant of the defendant, and that
in going up there he was about the defendant's work,
and that he was authorized by the terms of his employ-
ment to so go up that ladder and for the purpose that
he did ascend it.  *    *    *
"If the plaintiff of his own volition was occupying
the position that he did occupy upon this ladder merely
for his own convenience and accommodation, or out of
mere curiosity on his part, then he would not be en-
titled to recover.  *    *    *
"And again, if you should find that the plaintiff at
the time he was injured had quit the work assigned to
him by the defendant, and voluntarily undertook to do

work about which he had no duties to perform, by virtue of the contractual relations existing between him and the defendant, then while such condition exists the duty growing out of that relation, of using care by the defendant for plaintiff's safety, does not rest upon the defendant.  *  *  *

"If you find that the plaintiff was not authorized, either expressly or impliedly, to go up that ladder as he did go; that if in going up there he was not in the performance of his duty toward the defendant and in the service of the defendant, then he would not be entitled to recover."

The rule, as stated in 4 Labatt's Master and Servant (2d Ed.), § 1566, is as follows:.

"The question whether the injured person was acting in the course of his employment is for the jury, where the evidence is conflicting, or where a difference of opinion may reasonably be entertained with regard to the proper inference to be drawn from the testimony."

See, also, 26 Cyc. pp. 1461, 1462, and cases cited in note 36, and see 4 Thompson on Negligence, § 3753, and cases cited.

After a careful consideration of all the authorities cited we have reached the conclusion that the question whether or not at the moment of injury the plaintiff was acting within the scope of his employment was one for the jury and that it was properly submitted.

Error is assigned upon the action of the court in permitting the plaintiff to give his reasons for climbing the ladder on the ground that such testimony was self-serving. We think the evidence competent and its weight for the jury.

Other assignments relate to the admission or exclusion of testimony, but we find no reversible error therein.

In discussing the measure of damages, the court permitted the jury to consider the question of the de-

creased earning power of the plaintiff. This is urged as reversible error upon the ground that:

"Plaintiff's own testimony established the fact that since the accident and at the time of the trial he was earning as much as before the injury and also that he had returned to an identical job at the same wages as he had worked at before the injury."

On behalf of the plaintiff it is pointed out that wages had gone up between the time of the accident and the time of the subsequent employment; that his injury made it necessary for him to do lighter work and that the undisputed testimony of Dr. Webb shows that the injury was of a permanent character and impaired plaintiff permanently. We think this element of damage was properly submitted to the jury.

Finally a reversal of the case is sought upon the ground that the trial judge indulged in improper conduct and language in the course of the trial. In denying a motion for a directed verdict the court said:

"He could not delegate the putting in of these to some of his employees and escape the liability for that neglect, to have that ladder properly built. The only wonder is others were not injured before the plaintiff here was injured."

This language, if used in the presence of the jury, would doubtless be open to serious objection, but it was not so delivered and therefore must have been without prejudice to the defendant. Two or three other episodes occurring in the examination of witnesses are cited to show that the court was prejudiced, and that such prejudice worked to the detriment of the defendant. While we have frequently held that conduct or language on the part of the trial judge indicating the bent of his mind constitutes reversible error, *Schwanz* v. *Wujek*, 163 Mich. 492, and *Jageriskey* v. *Railway*, 163 Mich. 631, we are yet of opinion after a careful perusal of this record that the rights of the

defendant were not prejudiced by the conduct or language of the court.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.