NORRIS *v.* ELMDALE ELEVATOR CO.

1. MASTER AND SERVANT—NEGLIGENCE—LABOR LAWS—LOOSE PUL-
   LEY.

> In an action by an employee, engaged as a carpenter to
> make repairs in defendant's elevator, for injuries re-
> ceived while attempting to replace a belt upon a moving
> pulley, the question as to whether it was defendant's duty
> to provide a loose pulley, under 2 Comp. Laws 1915, §
> 5336, *held*, under the circumstances, for the jury.

2. SAME—TRIAL—INSTRUCTIONS.

> In said action, remarks by the trial judge and his charge
> to the jury indicating an absolute duty of defendant, un-
> der said statute, to provide a loose pulley, *held*, prejudicial.

3. SAME—CONSTRUCTION OF STATUTE—LABOR LAWS — "POSSIBLE."

> The requirement of said statute that loose pulleys be in-
> stalled wherever possible is construed to mean wherever
> reasonable and practicable, and not where unreasonable
> and impracticable.

4. SAME—EVIDENCE—ORDER OF LABOR DEPARTMENT—LOOSE PULLEY
   —STATUTES.

> The trial judge was not in error in excluding an order
> of the department of labor requiring certain changes to
> be made, but saying nothing about the loose pulley, since
> it was defendant's duty, under the statute, to install it, if
> possible, independent of any order from the department.

5. SAME—SCOPE OF EMPLOYMENT—QUESTION FOR JURY.

> In view of testimony by plaintiff, although contradicted by
> defendant, that plaintiff had orders, after making repairs,
> to leave machinery running, it was a question for the jury
> as to whether he was acting within the scope of his em-
> ployment in replacing a belt upon a moving pulley.

6. DAMAGES—IMPAIRMENT OF EARNING CAPACITY.

> Impairment of earning capacity of an injured employee
> should be measured by his impairment of earning
> capacity in his usual employment.

7. SAME—EVIDENCE—ADMISSIBILITY—SUBSEQUENT EARNINGS.

As bearing upon the question of impairment of earning capacity, evidence of subsequent earnings in the same or other employment, and of changes in wages and conditions of labor, *held*, admissible.

8. SAME—CAPACITY TO EARN.

The difference in the actual earnings of plaintiff before and after the injury does not constitute the measure of damages for impairment of earning capacity; hence the amount which plaintiff is capable of earning, and not that which he has actually earned since the injury, is to be taken for the purpose of comparison with his previous earnings as showing the diminution of earning capacity.

9. SAME—EVIDENCE—CONCLUSION.

Where the facts as to the nature, extent, and history of plaintiff's injury and subsequent employment were before the jury, it was not error to permit him to testify that by reason of said injury his ability to do carpenter work had been decreased one-half.

Error to Ionia; Davis (Frank D. M.), J. Submitted October 20, 1921. (Docket No. 152.) Decided December 21, 1921.

Case by Alvin E. Norris against the Elmdale Elevator Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Clare J. Hall*, for appellant.

*Hawley, Eldred & Gemuend*, for appellee.

CLARK, J. Plaintiff, a carpenter, was employed by defendant to repair and remodel its elevator. Van-Sice was defendant's manager. Krauss had charge of the elevator in his absence. VanSice testified:

"*Q.* Did Krauss have charge of the operation of all of the machinery?

"*A*. He had charge of it when I wasn't there, or if I was there we both worked together. When I worked in the elevator, I worked together with him. When

we started to build and put on the addition I did not do much work in the elevator, although I did some.

"When we started to build and put on the addition I didn't do much work in it. Krauss' duties at that time were the same as before. The condition was the same except he had less assistance from me, if anything came up he always took it up with me; 'phoned in to me in the office and I instructed him what to do and then he went on and fulfilled my instructions."

Plaintiff testified:

"VanSice told me that if Krauss wanted me to do anything in the way of repairing machines or repairing around the building, to do so, in VanSice's absence to do whatever Krauss asked me to do in his absence.

"Q. At those times who gave you directions as to the work?

"A. If there was any repairs to be made Mr. Krauss did. * * *

"Q. Did he (Krauss) say anything to you about the machinery if you found it in motion, what you were to do with it?

"A. He told me to leave the machines as I found them. He said if the machinery was running I should leave it running when I got through with my work; I should not stop a machine and go away and leave it.

"Q. If you stopped it, what did he tell you to do with it when you left it?

"A. To leave it running, start it again. * * *

"On one occasion, I remember of leaving a machine not running, he talked quite rough to me because I did not start it when I got through with it."

Plaintiff's testimony, quoted above, was contradicted by both VanSice and Krauss. When the employment had continued about 6 months, Krauss ordered plaintiff to renew a screen in a spout attached to a bean polisher. Plaintiff stopped the machine by throwing off the belt, renewed the screen and attempted to replace the belt upon the counter-shaft pulley, revolving about 200 times per minute, and in such attempt

was injured.   Plaintiff said he did not know where
VanSice was when he received the order.   It is not
shown that plaintiff had theretofore attempted to
start any of the machines in the manner indicated.
The injury was the breaking of bones in the right
wrist.   Physicians testified of a permanent impair-
ment.   Plaintiff testified to an impairment as to car-
penter work of 50%.

Several months after the injury, plaintiff again re-
sumed carpenter work for a short time and after
completing two jobs he accepted a position as signal
man and assistant foreman with a railroad company,
in which employment he continued steadily for more
than two years and until about a week before the trial,
when he was laid off because of labor conditions.   His
wages as carpenter at the time of the accident were
$5 per day.   From the railroad he received 68 cents
per hour at first, and when he was laid off this had
been increased to 85 cents per hour.

The negligence charged against defendant was a
failure to instruct plaintiff as to the proper manner in
which to place the belt on the counter-shaft. pulley
while in motion and the failure to provide a loose
pulley on the shaft in accordance with section 5336, 2
Comp. Laws 1915.

"It shall be the duty of the owner of any factory,
storehouse or warehouse, or his agent, superintend-
ent or other person in charge of the same, to furnish
or supply, or cause to be furnished or supplied, in the
discretion of the factory inspector, where machinery
is in use, proper shifters or other mechanical con-
trivances for the purpose of throwing belts on or off
pulleys.   All gearing or belting shall be provided with
proper safeguards, and whenever possible machinery
shall be provided with loose pulleys.   All vats, saws,
pans, planers, cogs, set-screws, gearing and machin-
ery of every description shall be properly guarded
when deemed necessary by the factory inspector."

Defendant had removed a loose pulley from the shaft some time before the accident. Plaintiff had verdict and judgment for $5,000.

Defendant has 47 assignments of error, many of them discussed in the briefs.

1. The statute above quoted made it defendant's duty to provide if possible a loose pulley on the counter-shaft. Defendant contended that it was not possible to so provide and gave as reasons for removing the loose pulley and for not having it in use, interference with another machine in the elevator, the size of the room and the proximity of other machinery. Plaintiff contended that the loose pulley could have been provided and used by installing a device described by a witness and which he called a beltshifter. Whether it was defendant's duty to provide the loose pulley under the circumstances was a question for the jury.

Defendant sought to introduce a certified copy of an order of the department of labor following an inspection of the elevator and in which defendant was directed to guard exposed cogs and in which nothing was said of the loose pulley or a beltshifter. Then follows:

"*Mr. Hawley:* What is the object?

"*Mr. Hall:* The object is to show the labor department did not require us to put any loose pulley on this machine, nor a beltshifter.

"*Mr. Hawley:* I object to it as far as the loose pulley is concerned, or so far as the beltshifter is concerned as incompetent and immaterial.

"*The Court:* I don't see how this would establish anything only the fact he didn't make any order. The statute required that.    *    *    *

"*The Court:* The report don't show he did anything.

"*Mr. Hall:* The report does show he did something.

"*The Court:* Yes, in another matter.

"*Mr. Hall:* Suppose it was right about this same machine?

"*The Court:* Only show negligence on the part of the other fellow.    The law required it to be done, if he neglects his duty I don't think you can try this question against this man—

"*Mr. Hall:* I am not going to depend on any State official.

"*The Court:* It would be negligence on the part of any State official to go there and find the machine running contrary to law if he didn't take any action about it."

In another part of the colloquy, the issue of fact as to the pulley was recognized by the trial judge.    Such issue was also recognized in the charge, but in the charge also appears the following:

"So there is another question for you to take into consideration in determining the meaning of the word possible.    It is their bounden duty under the law to have had it there, that evidences some negligence if they failed to have it there.    It is for you to say whether that is the proximate or direct cause of the injury."

Upon this record we cannot say that the quoted remarks of the trial judge and the quoted excerpt from the charge, as indicating an absolute duty of defendant to provide and of the labor department to require a loose pulley, were not prejudicial to defendant.

As the case must go back for a new trial, some other questions should be considered.

2. In what sense was the word "possible" used in the statute.    It was not used in an extreme sense.    Perhaps it is within the limit of human ability to provide all machinery requiring belts with loose pulleys.    To so hold would give the statute the effect of requiring loose pulleys in all cases.    Had the legislature so intended it might have so provided. The word as here used means "practicable" and has reference to available means, resources, and existing conditions.    Where it is reasonable and practicable to provide such pulley it is required, where unreason-

able and impracticable it is not.    A case in point is *Harley* v. *Sanitary District of Chicago*, 107 Ill. App. 546.

3. The court did not err in refusing to receive the copy of the order of the department of labor.    It did not relate to the pulley and the statute made it defendant's duty, independent of orders from the department, to provide the loose pulley, if possible. *Swick* v. *Cement Co.*, 147 Mich. 454.

4. It is urged that plaintiff's placing the belt upon the pulley was without the scope of the employment. Plaintiff's testimony respecting the directions from VanSice, the orders from Krauss, above quoted, and the circumstances under which the particular order was given made this question one of fact for the jury, which was submitted under proper instructions.    The jury might infer from plaintiff's testimony that VanSice was absent when the particular order was given. See *Van Driel* v. *Stevens*, 200 Mich. 291.

5. A question is raised respecting damages for impairment of earning capacity.    Plaintiff's damages in this regard should be measured by his impairment of earning capacity in his usual employment.    *Millette* v. *Railway*, 186 Mich. 634; *Ostrander* v. *City of Lansing*, 115 Mich. 224.    As bearing upon that question evidence might be received of subsequent earnings in the same or other employment, and of changes in wages and conditions of labor.    *Van Driel* v. *Stevens, supra.*    The rule is stated in 17 C. J. p. 898:

"The difference in the actual earnings of plaintiff before and after the injury does not constitute the measure; hence the amount which plaintiff is capable of earning and not that which he has actually earned since the injury is to be taken for the purpose of comparison with his previous earnings as showing the diminution of earning capacity."

See, also, *Geveke* v. *Railroad Co.*, 57 Mich. 589.

6. It was not error to permit plaintiff to testify that by reason of his injury his ability to do carpenter work had been decreased one-half, the facts as to nature, extent and history of the injury and subsequent employment being before the jury. A physician might have so testified. *McDonald* v. *Railway Co.,* 144 Mich. 379. And a plaintiff suing for an injury to a foot was permitted to state that he could not use it (*McDonald* v. *Railway Co., supra*) and under a different state of facts he might have testified to what extent he could use it.

A case squarely in point is *Atlanta, etc., Railroad* v. *Johnson,* 66 Ga. 259. See, also, 22 C. J. p. 618, and cases cited.

7. Error is assigned upon the denial of a motion for a new trial upon the ground that the verdict is excessive. This question would have our serious consideration but for the fact that a new trial is to be granted.

The other questions are not likely to arise upon a new trial.

Judgment reversed, with costs to defendant. New trial granted.

Steere, C. J., and Moore, Wiest, Stone, Bird, and Sharpe, JJ., concurred. Fellows, J., did not sit.