[No. 11215.  *En Banc.*  January 5, 1915.]

## JENNIE I. PIERCE, *Plaintiff*, v. SEATTLE ELECTRIC COMPANY *et al., Defendants.*[1]

APPEAL—REHEARING — SCOPE — MATTERS NOT PREVIOUSLY URGED. Where, pending an appeal, the supreme court, in another case, announced a new rule of practice whereby, when a new trial had been granted upon some specific ground, on appeal therefrom the respondent might sustain the order by urging all the grounds covered in his motion, the supreme court will, on granting a rehearing, give respondent the advantage of applying the new rule, although not urged in the briefs on appeal or on oral argument; it appearing that the new rule had not been announced when the briefs were prepared, and was not known to counsel when the cause was first argued, having been promulgated for but a short time.

DAMAGES — PERSONAL INJURIES—EVIDENCE—EARNING CAPACITY— PROSPECTIVE PROFITS—ADMISSIBILITY. In an action for personal injuries sustained by a woman who was selling hair goods, evidence that she contemplated opening a place for the sale of hair goods, is competent on an issue as to her loss of earning capacity, as tending to show her ability to work and transact business, and is not objectionable as showing anticipated profits, where no specific statement was made as to amount of anticipated profits lost.

WITNESSES — IMPEACHMENT — REDIRECT EXAMINATION — SCOPE. Where, on laying the ground for the impeachment of a witness, the witness denied making any such statement as was imputed to her, it is not prejudicial error to refuse to allow the witness, on redirect at that time, to detail a conversation held at the time in question; especially where, after the direct impeachment of the witness, she was not called in rebuttal to give her version of the matter, and no excuse was given for failing to recall her.

RELEASE—FRAUD — BURDEN OF PROOF — INSTRUCTIONS. Where one of the defenses in a personal injury case was a release and discharge, alleged by plaintiff to be procured by fraud, a general instruction that the burden of proving the affirmative defenses was upon the defendant, is not misleading or error, where, as to this particular defense, the jury was instructed that the burden was upon the plaintiff to overcome the defendant's *prima facie* case by evidence that was "clear, strong, satisfactory, and convincing."

[1]Reported in 145 Pac. 228.

SAME—FRAUD—MATTERS OF OPINION—QUESTION FOR JURY. Notwithstanding that statements of physicians to the effect that plaintiff would probably recover in a few weeks were matters of opinion, a finding that a release was induced by fraud is a question for the jury, where there was other evidence to the effect that plaintiff was further induced by statements that the release was only a receipt for the money paid, to be applied on account in event her injuries were permanent.

Cross-appeals from a judgment of the superior court for King county, Smith, J., entered January 7, 1913, granting a new trial after the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in alighting from a street car. Reversed on plaintiff's appeal.

*Walter S. Fulton* and *Arthur E. Griffin*, for plaintiff.

*James B. Howe* and *A. J. Falknor*, for defendants.

## ON REHEARING.

CROW, C. J.—A rehearing has been granted in this case, but a restatement of the issues and facts is unnecessary. The questions considered on the former hearing were (1) whether the facts were sufficient to sustain the verdict, and (2) whether the verdict, if allowed to stand, should be reduced. Our decision was against defendant's contention on both of these propositions. *Pierce v. Seattle Elec. Co.*, 78 Wash. 167, 138 Pac. 666. To these rulings we now adhere.

The plaintiff has appealed from an order granting a new trial, and the defendant has appealed from an order denying its motion for judgment notwithstanding the verdict. Both parties having appealed, we will avoid confusion by alluding to them as plaintiff and defendant. The questions to be decided at this time are, (1) whether we will consider additional assignments of error now presented for the first time by the defendant in support of its motion for a new trial, and (2) if so, whether such additional assignments disclose error of law sufficient to necessitate a new trial.

While the appeal in this case was pending, this court in *Rochester v. Seattle, Renton & Southern R. Co.,* 75 Wash. 559, 135 Pac. 209, announced a new rule of practice, holding that, where a new trial had been granted upon some specific ground, and the adverse party had appealed, the respondent might sustain the order by urging all the grounds covered by his motion; so that he would not thereafter be put to the necessity of further proceedings in the court below, or another appeal upon the same record. We there said:

"The correct rule of practice is now announced to be that, where, upon the consideration of a motion for new trial, the trial court enters an order granting a motion upon a specific ground or for a specific reason stated, and the adverse party appeals, the party seeking to sustain the order may urge in this court all the grounds which were covered by his motion, and is not limited to the specific ground or reason upon which the trial court based the order. A second appeal will not be entertained. However, to apply this rule to the present case would be unjust, since the practice here followed is in accordance with the previous holdings of this court. We will therefore consider this case upon its merits."

Our decision in that case was handed down on October 2, 1913. This case was first heard in this court on November 6, 1913, and was decided on February 16, 1914. Plaintiff insists that defendant should not be permitted to present additional assignments, as it had notice of the change in our rule of practice in ample time to act under it before or at the time of the original argument, or while the case was being considered by this court; that, having failed to do so, and having allowed an opinion to be filed, it cannot raise new questions by petition for rehearing or upon rehearing. Defendant proceeded in strict accord with the settled practice as it existed prior to the decision in the *Rochester* case. Counsel for the defendant frankly say that the decision had not been called to their attention at the time this case was first argued.

We are not disposed to make technical application of any rule which does not touch the substantive law of a case, especially where it has been so recently announced and there is no showing of bad faith. To bind a litigant in a given case where the court, in the same case, overlooked the fact that its changed practice might apply, might operate as a denial of justice. We would arbitrarily cut off a right which an appellant had at the time his appeal was taken. It is no answer to say that defendant did not urge its right in its former brief, or by a supplemental brief. It was not bound to do so, and is entitled to be heard now unless we are prepared to hold that it is fatal to a litigant to assume that the court will decide in its favor upon the question that is before the court. This would be to say that appeals are not prosecuted with an earnest belief that the court will decide in favor of the appellant. There may be some such appeals. If so, they are the exception and not the rule. The object of all lawsuits is to arrive at the ultimate truth and do justice. Rules are made to promote justice, not to defeat it. Nor do we think that the right to be heard should be denied under the many decisions cited, holding that the court will not consider matters urged for the first time on petition for rehearing. To so hold, would be to say that the other grounds of the motion for a new trial should have been argued in the defendant's brief, when, under the rule as it existed at the time the brief was prepared, we would not have considered them. Plaintiff's objection to hearing the additional assignments of error now predicated upon the grounds of the motion for a new trial not considered or impliedly overruled by the court below, is overruled.

Plaintiff, as a witness in her own behalf, was interrogated and testified, in part, as follows:

"Q. What business were you in in Colorado? A. I had a hair dressing establishment. Q. For how long a time did you conduct a hair dressing establishment? A. About four years. Mr. Falknor: I object to that as immaterial. By

the Court: She has not been in that business for a great many years, has she? Mr. Griffin: No, but we will prove she was intending to go into that business here and would have done so if she hadn't been injured. By the Court: I think it is so remote as to what her business would have been at the time, she could hardly testify what she might do here. She was not familiar with conditions here. A. I was selling goods here. Q. Is that a profitable business? A. Very. Q. Before you were injured were you intending to go into that business? Mr. Falknor: I object to that as too remote and speculative. By the Court: She may go that far, state what she intended to do. A. I was going to open up a place on Third avenue. I had Messrs. West & Wheeler looking for a location for me and I was out selling goods. Q. You were out selling the goods, hair dressing goods? A. Yes, hair goods. Q. And you investigated what opportunities there were here in Seattle for a hair dressing business? A. Yes. Q. What were they? A. Very good, never better."

Defendant contends that this evidence was incompetent and prejudicial, the substance of its argument being that it amounted to a claim of damages for loss of profits in a contemplated business, and that loss of such profits cannot be shown as an element of damage. In support of this position, defendant cites *Kirk v. Seattle Elec. Co.*, 58 Wash. 283, 108 Pac. 604, 31 L. R. A. (N. S.) 991; *North Star Trading Co. v. Alaska-Yukon-Pacific Exposition*, 68 Wash. 457, 123 Pac. 605; and *Webster v. Beau*, 77 Wash. 444, 137 Pac. 1013, 51 L. R. A. (N. S.) 81, decided by this court, with additional authorities from other states. To the principle announced in these cases, plaintiff takes no exception; her position being that no evidence showing the value or extent of anticipated profits was offered or admitted. She insists that the evidence of which defendant complains was competent and admissible, not as a measure of damages for loss of profits, but as one of the elements entering into her principal case which, taken in connection with other evidence, had a tendency to show a loss of ability to work or transact business, and therefore, a resulting loss of earning capacity. The

evidence was competent as tending to show a loss of earning capacity, and as no specific statement was made of any specific amount of anticipated profits which plaintiff claimed she had lost, we fail to understand how the defendant was injured or prejudiced.

Mrs. Brier, a witness for defendant mentioned in our first opinion, during her examination in chief, testified to her recollection of what occurred at the time of the alleged settlement between plaintiff and defendant, the effect of her testimony being to show that the settlement was made in good faith and that no fraud was practiced by the defendant's agents. On her cross-examination, counsel for plaintiff sought to lay the foundation for her impeachment. With this purpose in view, he asked her if she did not have a conversation with plaintiff in the presence of plaintiff's daughter, in which she, the witness, told Mrs. Pierce "that she (Mrs. Pierce) had all the best of them because they agreed to get her well in two weeks." Mrs. Brier answered:

"A. I beg your pardon. Nothing was ever said—let me tell what was said at that conversation— A. I don't like to tell the conversation that passed. Mr. Griffin: I am laying the foundation for an impeaching question. Q. Didn't you say, the last time that you were at Mrs. Pierce's house, in effect this, in the presence of Mrs. Pierce and her daughter Margaret: 'You have all the best of them because they promised to get you well in two weeks, and you signed that paper and you didn't know what you were signing.' A. I beg your pardon, I never said such a word, and the conversation, if you want me to say it, I will tell you the conversation that passed between us, which I don't like to do."

On redirect examination, defendant's counsel asked Mrs. Brier to detail the conversation as she remembered it. To this counsel for plaintiff objected, saying:

"I simply laid the foundation for an impeaching question when I got Mrs. Pierce on the stand and her daughter; that is the reason. In fairness I asked the witness if such a conversation didn't occur and she said no such conversation took

place. She denied any such conversation took place, and that settles it. If she admitted a portion of it took place, or some such conversation took place, then Mr. Falknor could inquire, but not when she denies it."

This objection was sustained, and upon this ruling of the trial court, the defendant now predicates one of its additional assignments of error, contending that Mrs. Brier, on her redirect examination, should have been permitted to state the full conversation to which her attention had been directed by the impeaching question. The record shows that the cross-examination above set forth was the first instance in which the alleged conversation was mentioned during the progress of the trial. No testimony had theretofore been given by plaintiff or any other witness relative to the supposed conversation. Mrs. Brier denied having made any statement such as was suggested to her by the impeaching question. At that time, no conversation calling for an explanation had been given in evidence. After the defendant rested, the plaintiff and her daughter were recalled in rebuttal, and testified on this subject. Their testimony was in substance the same, plaintiff's evidence being as follows:

"Q. You know Mrs. Brier, do you? A. I do. Q. How close to where you live does Mrs. Brier live? A. She lives in the same block. Q. I want to ask you whether or not Mrs. Brier said to you, in the presence of Margaret, at the last time or about the last time that she was at your house, 'You have all the best of them because they promised to get you well in two weeks.' A. She did. Q. 'And you signed that paper and did not know what you were signing.' A. That is what she said, she told me, she said, 'You didn't know what you were signing,' and she said, 'You have the best of them. They have got themselves in trouble and they know it.'"

This testimony given by the respective witnesses had a bearing, not only on the issue whether the settlement had been made in good faith, but also went to the credibility of Mrs. Brier. Had the plaintiff and her daughter not been recalled

as impeaching witnesses to testify to this alleged conversation, there would have been nothing in the record tending to contradict or impeach Mrs. Brier. While, in the exercise of his discretion, it might have been proper for the trial judge to have permitted Mrs. Brier on her redirect examination to give her version of the conversation mentioned in the impeaching question, there was no real necessity for pursuing such a course at that time, as Mrs. Brier could have been recalled to give her version of the conversation after plaintiff and her daughter had testified as impeaching witnesses. There is no suggestion that defendant was unable to recall her. Having failed to do so, defendant is in no position to predicate error upon the ruling whereby the trial judge excluded the redirect examination. In *Southern R. Co. v. Stewart*, 141 Ky. 270, 132 S. W. 435, a case cited by defendant, the court in the course of its opinion said:

"As the impeached witness may, as it is pointed out in the *Queen's* case, *supra*, leave the scene of the trial, and cannot then be introduced, we conclude that it is always proper to permit him, on reexamination, while on the stand, to explain the supposed contradictory statement. On the other hand, as the impeaching witness may not be introduced at all, and there may be, therefore, no necessity for explanation, we conclude that the impeached witness may be recalled and then given an opportunity to explain. In other words, the impeached witness at one stage of the proceedings or another should always be given an opportunity to explain the supposed contradictory statement."

After the plaintiff and her daughter had been recalled, and had given their testimony relative to this conversation, had the defendant then recalled Mrs. Brier to give her version of the conversation, and had the trial court at that time rejected her evidence, we would hold that prejudicial error was committed; but to hold on the record before us that the case should be reversed, the defendant having made no effort to recall Mrs. Brier, would be the declaration of a more technical rule than we should announce, in the absence of any

showing that for some sufficient reason Mrs. Brier could not have been recalled.

The trial judge, when defining the issues, instructed the jury in a general way that the burden of proving the affirmative defenses was upon the defendant. One of these defenses was the execution of a release which plaintiff contends was obtained by certain fraudulent representations as to the extent of her injuries, and the probable duration of her disability. Thereafter, the court fully instructed as to this defense, announcing the rule that the burden of overcoming defendant's *prima facie* case by evidence "clear, strong, satisfactory and convincing" was imposed upon the plaintiff. We have held in a line of cases too numerous to require citation that we will not reverse a case because of some technical error in the giving of instructions when it is apparent from the entire record that the jury could not have been misled. The only question for the jury on the issue involved was whether the execution and delivery of the release had been induced by fraud, and on this issue they were so specifically instructed that the burden was on the plaintiff that we are unable to conclude the jury were misled by the general instruction above mentioned.

The defendant contends that the trial court erred in submitting the question of fraudulent misrepresentations to the jury for the two reasons, first, that the whole record shows that the alleged representations of the claim agent and the company's doctor to the effect that plaintiff would probably recover in about two weeks, was no more than an expression of opinion, and second, that plaintiff's own physician, Dr. Snow, had told her that her recovery might be delayed for a considerable period of time. If the representations as to time of recovery stood alone, defendant's contention would have some merit, but when such representations are considered in connection with the fact that plaintiff and her daughter testified that the release was signed under the mistaken notion that it was only a receipt for the money then paid, and

that the sum so paid would be treated as a payment on account in the event that her injuries proved permanent, and the further fact that there was some doubt as to whether the one alleged to be plaintiff's family physician really sustained that relation, it becomes apparent that this case is not controlled by the rule announced in *Nath v. Oregon R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251. Dr. Snow was called in March and attended plaintiff about three times, or until he learned that she was being treated by Dr. Willis, the defendant's physician. Dr. Snow then withdrew and did not see plaintiff until July. To hold, under such circumstances, that she was bound by the opinion of Dr. Snow to the exclusion of that of Dr. Willis, and to so hold as a matter of law, would be unjust. The mere fact that plaintiff's testimony might seem improbable would not warrant us in withdrawing a disputed question of fact from the jury.

The order of the lower court granting a new trial is reversed, and the cause is remanded with instructions to enter judgment upon the verdict of the jury.

Ellis, Gose, Parker, Main, and Morris, JJ., concur.