## DUNAGAN v. APPALACHIAN POWER CO.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2655.

1. **Electricity** ⬅19(4)—**Evidence that defendant, after accident, had grounded fence where deceased was electrocuted, held inadmissible.**

In action for death during deceased's attempt to switch off electric current, evidence to effect that fence near which deceased was electrocuted had been grounded by defendant after accident occurred *held* inadmissible.

2. **Jury** ⬅92—**That jurors sold goods to defendant held insufficient to disqualify them.**

In personal injury action, the fact that two jurors were engaged in supply business and sold goods to defendant is not sufficient to disqualify jurors.

3. **Appeal and error** ⬅200—**Objection to qualifications of jurors held too late on writ of error.**

Objection to qualification of jurors on ground that they sold goods to defendant *held* too late on writ of error.

4. **Trial** ⬅260(1)—**Refusal of instructions sufficiently covered in oral charge held not error.**

Refusal of requested instructions, which were sufficiently covered in oral charge given, *held* not to constitute error.

5. **Death** ⬅58(1)—**Instruction requiring plaintiff in action for death to prove deceased was free from contributory negligence held erroneous.**

In action for death, instruction requiring plaintiff to prove by the preponderance of the evidence that deceased was free from negligence contributing towards causing his death *held* erroneous.

6. **Negligence** ⬅122(1)—**In federal courts, burden of proving contributory negligence is on defendant.**

In federal courts, the burden of proving contributory negligence is on defendant, whether or not trial is held in state holding that burden is on plaintiff.

7. **Electricity** ⬅19(13)—**Instruction in action for death while attempting to pull electric switch held erroneous, as ignoring defendant's duty of proper inspection.**

In action for death resulting from electrocution during attempt to pull electric switch, instruction to effect that defendant was not negligent if lines were properly constructed and equipped *held* erroneous, in ignoring duty of proper inspection.

**8. Trial ⬦⟼199—Instruction submitting question of law passed on by appellate court held erroneous.**

Instruction submitting to jury and leaving open for their decision a question of law already passed on by appellate court on former writ of error *held* erroneous.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Action by Ellen Mary Dunagan, administratrix of the estate of Emery Dunagan, deceased, against the Appalachian Power Company, removed from state court. Judgment for defendant, and plaintiff brings error. Reversed, and new trial awarded.

William H. Werth, of Tazewell, Va., for plaintiff in error.

Robert E. Scott, of Richmond, Va. (Bernard McClaugherty and George Richardson, Jr., both of Bluefield, W. Va., on the brief), for defendant in error.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an action at law, brought in the circuit court of Mercer county, West Virginia, by Ellen Mary Dunagan, administratrix of the estate of Emery Dunagan, deceased, against the Appalachian Power Company, a corporation, to recover damages for the death of Emery Dunagan. The action was brought in September, 1924, and on petition of the defendant was removed to the District Court of the United States for the Southern District of West Virginia. There was a trial of the cause in January, 1925, and upon motion of the defendant the trial court directed a verdict for the defendant. A writ of error was sued out, and upon hearing in the Circuit Court of Appeals for this circuit the judgment was reversed and a new trial awarded. 11 F.(2d) p. 65. On the 28th of January, 1927, another trial was had and the cause submitted to the jury, which returned a verdict for the defendant. From the final judgment of the court upon this verdict, this writ of error was sued out.

There was some additional evidence on the second trial of the cause, and some additional facts were introduced. The deceased, Emery Dunagan, was an employee of the Pocahontas Fuel Company. He was a stable boss, and also had charge of the operation of an electric fan. The defendant generates, distributes, and sells electricity. Its lines not only supported high voltage transmission, and less heavily charged, but still deadly, lighting lines, but also telephone wires as well. These lines passed through or along the property of the Pocahontas Fuel Company, which was a customer of the defendant, and for which company the deceased worked. The defendant furnished the fuel company electricity to light its stable and operate its fan. On a pole near the stable where the deceased worked was a switch, by which the current could be cut off from the stable. Some 2½ hours before Dunagan was killed, at a point some 3 miles in the direction towards the defendant's power house, a broken insulator was noticed. This caused electrical disturbances, serious enough to attract attention in the neighborhood, and to break some of the wires upon defendant's line. Some 20 or 30 minutes before the accident, the telephone line on the pole opposite the shanty in which Dunagan was, and which, in the direction of the defendant's plant, was next that upon which the switch was, began to arc, at first intermittently, and then continuously, finally producing what appeared to be a solid ball of fire.

Upon this the deceased declared that "something had to be done," and that he had "a switch up there which he could pull and throw the current off that line." Dunagan got up and started to the switch pole. The witness, who was with him in the shanty, and who, so far as the record discloses, was the only person in the neighborhood, waited 2 or 3 minutes before following him. When this witness got close to the switch in question, he saw Dunagan lying on the ground some 15 or 18 feet from the pole upon which the switch-box was fastened, with his arms outstretched and with one hand reached within about 6 inches of the wire fence that surrounded it. The deceased struggled once or twice after the witness saw him on the ground, but he never spoke again. Medical examination shows that his death was due to an electric shock, which had apparently been communicated through his body by his having grasped some heavily electrically charged substance with his right hand. In the opinion in the former case (Ellen Mary Dunagan, Administratrix, v. Appalachian Power Co., supra) Judge Rose says:

"The defective condition of the defendant's appliances had created such a situation as threatened immediate peril to the property which the decedent was employed to watch. Any man in his place might well feel that he was bound to do all that he could for its protection. If he judged wrongly, it was because he was placed in a situation brought about by the defendant, and which seemed to

call for prompt action. If the fuel company had been an individual, personally present, it would have been entitled to do what in reason it could to protect its property. In the decedent's relation to the company, he stood in its shoes. Ivy v. Wilson, Cheves (S. C.) 74; Liming v. Illinois Central R. Co., 81 Iowa, 246, 253, 47 N. W. 66; Thorn v. James, 14 Manitoba, 373; 1 Shearman & Redfield on Negligence, § 85d. We cannot hold as a matter of law that a man of ordinary prudence would not have been justified in doing for the protection of his property all that the decedent did.

"It is true that the record as it stands does not show that what was wrong on defendant's line threatened any immediate danger to human life, to save which one may take chances which he might not be justified in doing merely to protect property. Nevertheless, as the authorities already cited teach, he who acts to guard property, whether of his own, of his employer, or of a third person, threatened by the consequences of the negligence of some one else, may properly do what he could otherwise attempt only at his own risk. We do not see anything to show that decedent acted as an ordinarily prudent man, under the circumstances in which he found himself, would not have done, and therefore such cases as Pegram v. Seaboard Air Line, 139 N. C. 303, 51 S. E. 975, 4 Ann. Cas. 214, are not in point."

There were seven assignments of error, which will be considered in the order in which they are stated in the record.

[1] As to the first assignment of error, which raises the question of the correctness of the ruling of the judge below in refusing to permit the introduction of evidence showing the grounding of the fence by the defendant after the accident occurred, we think the ruling of the court was correct. We can see nothing in this case that would make it an exception to the general rule on that point, excluding such evidence, a rule well stated by Mr. Justice Gray in Columbia, etc., v. Hawthorne, 144 U. S. 202, 12 S. Ct. 591, 36 L. Ed. 405. This case has been followed in a large number of decisions, including a number dealing with high power electric lines. See Rose's Notes, vol. 15, pp. 1167–1172; Supplement to Rose's Notes, vol. 3, p. 186; Jankey v. Gas Co., 91 W. Va. 308, 112 S. E. 642.

[2, 3] The appellant's second assignment of error raises the question of the qualification of two jurors. It is contended that these jurors were engaged in the supply business and sold goods to the defendant company, and that the plaintiff was not aware of these facts. We are of the opinion that these facts, if known, would not have disqualified the jurors in question. The existent facts could easily have been discovered by questioning, and, moreover, the objection to the jurors came too late. O. R. Ry. Co. v. Blake, 38 W. Va. 718, 18 S. E. 957.

[4] The third assignment of error raises the question of the refusal of the trial judge to give plaintiff's instructions 3 and 4 as requested. We are of the opinion that the oral charge sufficiently covered the same points contained in the instructions refused, and that there was no error in the refusal.

The fourth, fifth, sixth, and seventh assignments of error raise the question of the correctness of instructions given by the court at the instance of the defendant company and in the oral charge. Defendant's instruction No. 1, as given by the court, was as follows:

"The court instructs the jury that, before there can be any recovery in this action, three things must appear by preponderance of the evidence.

"(1) That the defendant company was guilty of negligence which was the sole cause of the death of the decedent, Dunagan.

"(2) That the said Dunagan himself was free from negligence which contributed towards causing his death.

"(3) That his own act was not the proximate cause of his death.

"If the jury believes, from the evidence, the lines of the power company were properly constructed of the proper materials, that the power house from which the electric current passed on to said lines was equipped with the usual modern appliances, that within a reasonable time after the said appliance indicated trouble on the line, reasonably prudent steps were taken to ascertain where the trouble was and to correct the same, then the defendant company was not guilty of negligence and there can be no recovery herein."

[5] We are of the opinion the statement in this instruction, that it must appear from the preponderance of the evidence "that the said Dunagan himself was free from negligence which contributed towards causing his death," constituted error.

[6] The rule in federal courts is invariable that the burden of proving contributory negligence is on the defendant, and this rule is enforced, even in states which hold that the burden is on the plaintiff. Cent. Vt. Ry. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433; New Orleans & N. E. R. Co. v.

Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167. This instruction states that freedom from contributory negligence must appear from the evidence when the converse is true. The contributory negligence must affirmatively appear from the evidence. Nor do we think this fault in the instruction as given was sufficiently cured by any statement in the oral charge.

[7]. We are also of the opinion that the last paragraph of instruction No. 1 is faulty in that it ignores the duty of proper inspection. The evidence shows that, while the defendant's line had been patrolled a short time before the accident, it had not been given a thorough inspection for a period of about 8 months. Companies handling electricity of the power proven here certainly owe the duty of a thorough inspection at such intervals as are demanded by the business. As to just what would constitute proper inspection in this case the record is not clear, although one of the defendant's witnesses testified that such inspections had been made as was customary.

At a former hearing of this case this court held that in endeavoring to throw the switch in question the deceased was acting properly and within the scope of his duty as an employee of the Pocahontas Fuel Company, injury to the property of which company was apparently threatened. Dunagan v. Appalachian Power Co. (C. C. A.) 11 F. (2d) 65.

Defendant's instruction No. 3, as given by the court, is as follows:

"If the jury believes from the evidence that it was not within the scope of the duty of the decedent Dunagan, as an employee of the Pocahontas Fuel Company, to operate the switch on pole 115, being pole in fan house lot, then under the circumstances disclosed by the evidence in this case, he was not justified in exposing himself to the dangers manifest in the situation at the time he left the shanty, as detailed in the evidence by the witness Adams, and they should find for the defendant."

[8] This instruction submits to the jury and leaves open for their decision a question of law already passed on by this court. While there was evidence in the second trial tending to show that the deceased was not technically a watchman, we do not think the situation was materially changed as to his duty to his employer, and that the giving of the instruction was erroneous.

From what has been said, it necessarily follows that the judgment below must be reversed, and a new trial awarded.

Reversed.