# CHARLESTON.

Frank Haggar *v.* Monongahela Transport Company

(No. 6139)

Submitted April 25, 1928. Decided December 11, 1928.

*Donley & Hatfield, Robert T. Donley* and *O'Brien & O'Brien,* for plaintiff in error.

*James A. Meredith, Donald G. Lazzelle* and *Terence D. Stewart,* for defendant in error.

LITZ, JUDGE:

The plaintiff, Frank Haggar, is aggrieved by the judgment of the circuit court setting aside a verdict of $26,500.00 in his favor against the defendant, Monongahela Transport Company, a corporation, for personal injuries sustained by him, about dark, August 14, 1926, while riding as a passenger on a motor bus operated by defendant for hire between Morgantown and Rivesville.

According to the testimony of the plaintiff he was occupying the seat immediately behind the driver with his left elbow on the sill of an open window and his hand supporting his chin at the time of his injury; the bus had prior thereto passed a small automobile which later, while the two machines were ascending "Bunker Hill", passed the bus, when its driver remarked, "I'll get you yet"; on reaching the top of the hill the bus "speeded up" in order to repass the car, and was about to pass it, traveling on the left side of the road at about 38 miles an hour, when another automobile driven by Robert Bowlby from the opposite direction suddenly appeared; in an effort to avoid the Bowlby car the driver of the bus steered it abruptly to the right, causing the left arm of the plaintiff to be projected through the window and severed (above the elbow) as the bus and the Bowlby

car "sideswiped"; and the bus continued its course for a distance of from 400 to 450 feet before stopping.

Nick Opecheck, a witness for the plaintiff, was also a passenger on the bus, sitting in the seat immediately behind the plaintiff. After testifying that the plaintiff was resting his left elbow in the window with his chin in his hand immediately before the accident, in answer to the question, "Did Frank (the plaintiff) have his elbow on that window sill?", the witness said: "I cannot tell you sure; all I know he held his hand like that." He further stated that the bus was traveling more than thirty miles an hour "nearly in the middle of the road", but turned "to one side" as the Bowlby car approached, causing his body to swing away from the window, and stopped fifteen or twenty feet beyond the point of collision. According to a written statement signed by Opecheck six days after the accident, but which he claims does not fairly represent what he understood it to contain at the time of signing it, the bus was traveling at a reasonable rate of speed on the right side of the road immediately before and at the time of the accident, and he did not observe the position of the plaintiff's left arm before the collision.

Robert Bowlby says he did not observe the bus until after passing a small car, immediately proceeding the bus, when it "appeared to be pulling out to pass the small car"; that "it seemed to me I immediately swerved my car and pulled the front end of my car off the (concrete surface of the) road in order to avoid the bus"; that his car was traveling at the time of the accident from twenty to thirty miles an hour, but he was unable to judge the speed of the bus which had passed out of sight when he stopped his car about 150 feet from the point of accident.

Edward Bowlby, who was riding in the front seat with Robert Bowlby, says that their car was traveling 25 to 30 miles an hour, and its right front wheel reached the dirt berm of the road about the time of the accident as a result of the car being steered to the right to avoid the bus. Pertinent parts of his testimony in relation to the situation immediately preceding the accident follow: "Q. When did you first see the bus? A. Just as we passed the other car. The bus was

so close behind it, it looked to me like he was coming around it. Q. In what direction? A. Pulling out from behind it to pass it. Q. The crash came just as the bus pulled out from behind the little car? A. At the same instant there was a crash.''

The two Bowlbys and a number of relatives who visited the scene of the accident several hours afterward state that they observed the imprint of an automobile tire in the wet earth several inches to the right of the concrete near the point of the accident on the side occupied by the Bowlby car corresponding with the tire on the right front wheel of their car.

George Hewitt, witness for the plaintiff, states that he was sitting on an open porch within view of the place of accident and observed the bus following closely a small car at the rate of about 40 miles an hour, and that he saw the light from the Bowlby car "swing over" when the bus "hit it". Ezekiel Wade, who lived seven or eight hundred feet from the road and about 1000 feet from the point of the accident, says that his daughter called his attention to the unusual speed of the bus immediately before the accident.

William Clayton, the driver of the bus, denies that he was following or attempting to pass another car or that he steered the bus to the left or right immediately before the accident. He states that he was driving the bus on the extreme right of the road only 25 or 30 miles an hour at the time of and immediately preceding the collision; that he observed the reflection of the lights of the Bowlby car about 150 feet away but could not see the car until it was within about fifty feet of the bus; that the car was running very fast, bouncing up and down, and ".wobbling" across the road; that he removed his foot from the throttle of the bus on observing the reflection of the lights of the Bowlby car, but did not apply the brake or sound the horn, and that he stopped from 80 to 100 feet after he heard the crash.

Kenneth Haun, who was riding in the third or fourth seat behind the plaintiff, says the bus was traveling on the right side of the road (so far as he knows) about 25 miles an hour when the accident occurred. He did not then or immediately before experience any jolt or unusual movement of the bus.

D. H. Donahoe, who was sitting on the right directly opposite the plaintiff, says the bus was traveling on the right side of the road about 30 miles an hour close to a small car, and the Bowlby car was moving about 45 miles an hour (he imagined), at the time of the collision.

Gertrude Donahoe, who was sitting in the front right seat of the bus, says that the bus was on the right side, traveling at an ordinary rate of speed at the time of the accident, and that she observed a car about 30 feet in front of the bus going in the same direction a short while before.

William Moore, who was riding in the right rear seat, states that the bus was traveling about thirty miles an hour three or four hundred feet behind another car, and the Bowlby car was traveling about fifty miles an hour at the time of the collision; and that the bus did not swerve to the right or left immediately before the accident. In a previous written statement by the witness introduced on his cross-examination, he stated that the bus was about a foot from the right-hand side of the road.

Arthur Freeland, who was sitting in the second seat behind the plaintiff, states that the bus was traveling 20 or 25 miles an hour; but does not know its exact position at the time of or immediately before the accident, and thinks that it was near the center of the road. In a previous written statement which was introduced on his cross-examination, the witness stated that the bus was racing with a small car; that "they had passed one another several times and the car passed the bus somewhere on the east side of Bunker Hill"; that "the bus went down the hill very fast, I think about thirty or thirty-five miles an hour;" that the last time he saw Frank (the plaintiff) he was sitting up straight with his elbow on the window sill and his hand up straight.

The physical facts surrounding the accident are as follows: the width of the bus is $7\frac{1}{2}$ feet, that of the Bowlby car $5\frac{1}{2}$ feet, and that of the concrete surface of the road 16 feet; the marks of the collision on the bus were a slight erasure on a spare tire which was fastened on the left front side, a scratch on the second left panel and an erasure of the paint for about three inches on the "up-right" of the window where the

plaintiff was sitting; the glass in the left rear part of the Bowlby car·was broken, the left rear door was dented, the left rear fender was slightly bent and bore marks of yellow paint (yellow was the color of the bus), and blood and parti-cles of flesh were "in the rear left window".

The defendant contends that the trial court was justified in setting aside the verdict on the ground that it is excessive. The amount of the verdict is large, but the injuries of plaintiff are very grave. We are of opinion that the sum awarded is not so disproportionate to the injuries as to indicate prejudice or improper motives. *Truschel* v. *Amusement Co.*, 102 W. Va. 215. While the sum awarded does not of itself justify the ruling of the court, its magnitude may be considered if the evidence supporting the verdict is inconclusive, which is the main argument pressed by defendant. It contends the testimony of the Bowlbys that they did not see the bus until they were passing the car in front of it is inconsistent with plaintiff's claim that the bus was on the left side of the road; and that the physical facts showing contact only between the rear of the Bowlby car and the front of the bus raises serious doubt as to whether the bus swerved to the right at the moment of the collision as the plaintiff claims. There is much merit in the contention. It would seem that if the bus had been very much on the left side of the road prior to the collision, it would have been visible to the Bowlbys; and if the bus had been swerving to the right at the moment of the collision it would also seem that the rear instead of the front of the bus would have been the part struck by the Bowlby car. The evidence of disinterested witnesses fails to clarify the issue. We are not to be understood as precluding the plaintiff on these matters, but simply as illustrating that his case is not so plain and free from doubt that we can say that the ruling of the circuit court is a wrongful invasion of the province of the jury. *Reynolds* v. *Tompkins*, 23 W. Va. 229.

It is settled law that a verdict of a jury upon conflicting evidence should not be disturbed unless manifestly wrong and against the weight of evidence; but it is equally well settled that "the judgment of the trial court on a verdict is enti-

528

tled to peculiar weight, and that this is especially true where the order of the court sets aside and does not approve the verdict." *St. Clair* v. *Jaco*, 95 W. Va. 5, 10-11. The opinion continues as follows: "The reason for this proposition is not only that the trial court has the advantage of this Court, in its observation of the witnesses and the evidence offered, which would be true whether the verdict be approved or set aside, but, as is stated in many cases, an order setting aside a verdict and awarding a new trial affords opportunity to both parties to again present both sides of the case to the end that justice may be more surely attained. A judgment upon the verdict concludes the matter; and a new trial gives further opportunity for appropriate decision." The reasons stated in that opinion impel the conclusion to affirm the ruling of the circuit court.

The judgment complained of is, therefore, affirmed.

*Affirmed.*