LORENZ *v.* SOWLE.

1. DAMAGES—EVIDENCE—LOSS OF EARNING POWER.
   Evidence that a physically injured plaintiff has been deprived by defendant through the injury of a wage-earning ability in certain employment that he formerly had and, but for the injury, again could have engaged in that employment is pertinent and admissible as to the value of that which defendant has caused him to lose, the remoteness of the former employment bearing on the probability of re-employment.

2. SAME—LOSS OF EARNING CAPACITY.
   The measure of damages for physical injury is not the difference in actual earning before and after the injury but the diminution in earning capacity.

3. SAME—EVIDENCE—INSTRUCTIONS—LOSS OF EARNING POWER.
   Claims of error in reception of evidence over defendant's objection and instructions given relative to measure of damages sustained by plaintiff from physical injuries received in automobile accident *held*, without merit, where test applied throughout was what plaintiff could have earned at various employ-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur, Damages § 338.
Admissibility, as against objection of remoteness, of evidence as to past earnings, upon issue as to amount of damages in action for personal injury.  130 ALR 164.
[2, 3] 15 Am Jur, Damages § 93.

ments he had had in the past and in which he could have re-engaged but for the injury, notwithstanding some types of his employment were some 4 to 7 years theretofore and his occupation at time of injury was operating a store and filling station which he owned.

Appeal from Bay; Louis (David R.), J. Submitted April 12, 1960. (Docket No. 49, Calendar No. 48,249.) Decided July 11, 1960.

Case by Fred Lorenz and United States Fidelity & Guaranty Company, a Maryland corporation, against Lee Sowle for damages resulting from automobile collision. Verdict and judgment for plaintiffs. Defendant appeals, attacking amount of award for personal injuries. Affirmed.

*Herbert, Wood & Hood* and *Kinnane & Neering,* for plaintiffs.

*Smith, Brooker & Harvey* (*Carl H. Smith, Sr.,* of counsel), for defendant.

DETHMERS, C. J. A jury awarded plaintiff Lorenz a verdict of $15,000 for costs of medical, hospital, and doctors' care and treatment, for pain and suffering, and for loss of earning ability, resulting from an automobile accident in which he and defendant had been involved. Defendant appeals.

Defendant's brief sets forth 7 questions involved. They relate to alleged error in 4 instructions given, in failure to give 2 of defendant's requests to charge, and in reception of certain of plaintiff's testimony over defendant's objection. All have to do with the measure of damages for loss of earning power. The essence of defendant's contention is that, in determining the amount to be allowed plaintiff for loss of earning ability, the jury should have been con-

fined, by instructions from the court and rulings on admissibility of evidence, to consideration of what his earning ability before injury had been in his *usual* employment or business. Defendant complains that the jury was not so limited.

Pertinent facts are that plaintiff was injured on December 6, 1956. He lived at Germfask, in the upper peninsula, where he owned and had been operating a store and filling station since 1949. Prior to the latter date he had lived in the lower peninsula and had been employed as a rough-grinder in a Detroit General Motors plant. For a 4-month period, from December, 1952, to April, 1953, he again worked in a General Motors plant in Flint. He was permitted to testify, over defendant's objections, that since his injury he was no longer able, physically, to do the kind of work he had done in the General Motors plants. While operating his store he had also worked around Germfask cutting grass, brushing, and as a pulpwood cutter. He also had greased cars and changed mufflers and tires in his filling station. He testified that after his injury he no longer could do the physical labor involved in such jobs. There were proofs of his income while living, working, and operating his business at Germfask. He testified, however, that he had not intended to stay in the Germfask area all his life. There was no proof, and this defendant stresses, that plaintiff had intended to or that there had been a reasonable probability that he would return at some future time to such work as he had done for General Motors or that it was or would have been available to him.

The absence of proof just above mentioned and the remoteness from date of injury to time when plaintiff had worked for General Motors afford the factual basis for defendant's claim of error with respect to jury consideration of loss of earning ability in employment of a kind which defendant in-

sists was not plaintiff's usual employment. In other words, defendant contends that work of the kind plaintiff had done 7 years before, and for a brief period 4 years before, for General Motors, could not, because of remoteness from time of injury, be considered, for damages purposes, his usual employment, and might not be taken into consideration at all unless it was shown that there had been a reasonable probability that plaintiff would return to it.

Defendant urges that support for his position on the law is to be found in the following cases: *Millette* v. *Detroit United Railway*, 186 Mich 634; *Sias* v. *Village of Reed City,* 103 Mich 312; *Pawlicki* v. *Detroit United Railway,* 191 Mich 536; *Ostrander* v. *City of Lansing,* 115 Mich 224; *Norris* v. *Elmdale Elevator Co.,* 216 Mich 548.

*Sias* and *Pawlicki* are cited by defendant for the proposition that consideration of employment prior to injury must be limited to that which is not too remote. In *Sias* employment within a few months and in *Pawlicki* 6 months before time of injury was held not too remote and consideration thereof permissible. No case is cited in which former employment was held too remote for that purpose, and none fixing the limits of such remoteness. Analysis of these decisions would indicate that the test is not whether there is a reasonable probability, as defendant suggests, that plaintiff would have, but, rather, that he could have returned to the former employment in question, had it not been for his injury, regardless of how long it had been since he had pursued it. Remoteness bears, of course, on that probability. When plaintiff has been deprived by injury of a wage-earning ability in certain employment, evidence that he formerly had and, but for the injury, again could have engaged in that employment is pertinent and admissible as to the value of that which defendant has caused him to lose.

In *Norris* plaintiff had been a carpenter until time
of injury. Afterwards he had obtained other em-
ployment, paying him higher compensation, in which
he had continued for more than 2 years until trial.
This Court held admissible his testimony that his in-
jury had decreased by 1/2 his ability to do carpenter
work, the facts about his subsequent work and earn-
ings also being before the jury. This Court said
his damages should be measured by his impairment
of earning capacity in his usual employment. In so
holding (p 554) this Court quoted with approval
from 17 CJ, Damages, § 196, p 898, to the effect that
the measure of damages was not the difference in
actual earning before and after the injury, but the
diminution of earning capacity. Because he had
lost earning capacity as a carpenter, which he had
been, he was entitled to be compensated for that
loss, even though he still could, thereafter, earn
more in other employment. And to like effect is
*Ostrander,* in which this Court held it proper for
the jury to consider plaintiff's loss of earning power
in his usual calling even though he might have been
able, after injury, to earn more in a different calling.
In *Millette* this Court held the measure of plaintiff's
damages was not confined to the loss he would sus-
tain in what was his temporary employment at the
time of injury, coal wagon driver, but that they were
measured by his inability to follow his usual, higher
paying work as a railroad brakeman. In none of
these 3 cases was the term "usual employment" used
to limit, but in each instance to enlarge the area of
employments which the jury might consider. It is
not for that purpose that defendant seeks to invoke
it here. In none did this Court cite authority for
its use of the term. The opinions contain no reason-
ing, only the use of the term, to support, and the
decisions do not support defendant's position here.

In holding as it did in *Ostrander,* this Court said that the rule as to measure of damages is clearly stated in *Geveke* v. *Grand Rapids & I. R. Co.,* 57 Mich 589. In *Geveke* no mention was made of plaintiff's "usual occupation". The charge which this Court did uphold in that case (p 597) said, rather, in effect, that the jury should consider "what the plaintiff would probably have been able to earn * * * had he not been injured." This applies the test, then, as discussed previously herein, of "could" rather than "would" as to plaintiff's future earnings had he not been injured.

In *Hanna* v. *McClave,* 273 Mich 571, 576, this Court said:

"It is also claimed: the Court was in error—'in submitting to the jury the loss of earning capacity without regard to probability of future earnings where deceased had been a retired farmer engaged in no gainful occupation for 10 years.'"

The claim of error was rejected by this Court. Again it was not what plaintiff probably would have, but what he could have, earned in the future had he not been injured which was sustained as the proper measure.

In *Pawlicki,* above discussed, plaintiff had quit his trade as a shoemaker 6 months before injury, had no intention of returning to it or to work for wages, but expected, instead, to open a shoe business. Nevertheless, this Court held it competent for the jury to consider his fitness for his previous employment and what he had been able to earn at it.

In *Miller* v. *Pillow,* 337 Mich 262, there was no showing that plaintiff would have had opportunities to or had intended to return to any of his former employments had he not been injured. In that case this Court said (pp 271, 272, 274):

"It was his [plaintiff's] claim that because of the injuries sustained by him his ability to work and earn wages had been permanently impaired. He testified to having worked at farm labor, as a stationary engineer, as an employee in a paper mill, as the driver of a gasoline tank, and in the restaurant business in which he had embarked in 1948. Testimony was offered as to wages customarily paid in such lines of employment, evidently on the theory that plaintiff, had he not been injured, might have engaged in any of the various lines of employment in which he had had experience previously, and might have earned wages therein as an ordinary laborer. Objections were made to such testimony on the ground that plaintiff was at the time of the accident operating a restaurant, and that proofs as to his loss of earning ability should be confined to that character of work. The objections were overruled and the jury was permitted to consider the testimony for its bearing on the general issue as to plaintiff's loss of earning ability. * * *

"Being competent to pursue various lines of employment, no reason is apparent for precluding him from showing what he might earn in different kinds of labor that he had performed in the past, and which he would have been capable of performing in the future had he not been injured by defendant's negligence. There was no error in the admission of the testimony in question."

Once again the test employed was not what he would have but what he could have done, but for the injury, as he had done in the past.

For a thoroughgoing discussion and analysis of the problem in this case, see *Jacobsen* v. *Poland,* 163 Neb 590 (80 NW2d 891), in which the Nebraska court upheld the position here contended for by plaintiff.

Affirmed, with costs to plaintiff.

CARR, KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.