DONALD M. GAULT, *et al.*

*v.*

THE MONONGAHELA POWER COMPANY, *etc.*

(No. 13562)

Decided January 13, 1976.

*Earley, Bailey & Pfalzgraf, William R. Pfalzgraf* for appellants.

*McDougle, Davis, Handlan & Davis, Fred L. Davis* for appellee.

CAPLAN, JUSTICE:

This is an appeal by plaintiffs, Donald M. Gault and Irene Gault, his wife, from a final order of the Circuit Court of Pleasants County which was entered in an action instituted therein by the appellants against the Monongahela Power Company, a corporation. In that action the plaintiffs sought recovery of damages for injuries which they alleged were caused to Donald M. Gault by reason of the negligence of the said power company. Upon trial of the above action the jury returned a verdict in favor of Donald M. Gault in the sum of $67,500.00 and a verdict in favor of plaintiff Irene Gault in the amount of $10,000.00. Thereupon the defendant power company filed its motion to set aside the verdicts and

award a new trial, assigning twenty grounds therefor. The court subsequently entered its order sustaining the motion and awarded a new trial. The trial court rendered no opinion and stated no reason for its action. It is from that order that this appeal is prosecuted.

The ultimate issue presented upon this appeal is whether the court erred in granting the "Motion of the Defendant to set aside the Verdicts and Award the Defendant a New Trial."

The record reveals the following factual situation which gave rise to this action. In the late afternoon of May 31, 1971 the plaintiff, Donald M. Gault, after finishing his day's labor on his farm discovered that his horse was missing. He decided to look for it and had one of his helpers drive him in a tractor up to the crest of a hill which was located on his farm. The area in which he left the tractor was approximately 1,500 feet above his home and some 800 feet from a road. According to the testimony of this plaintiff the area was overgrown with brush and he took an axe with him in the event he found his horse caught up in the underbrush.

The plaintiff had just begun his search when his head came in contact with a low hung high voltage uninsulated wire which was a part of the transmission line owned and operated by the Monongahela Power Company. The evidence reveals that the slack in the wire caused it to hang from four to six feet from the ground. The shock received from this contact rendered the plaintiff unconscious. Upon regaining his consciousness he observed the body of the horse for which he had been searching lying in the general area. The horse had been killed by making contact with the same wire that injured the plaintiff. The plaintiff testified that he felt sick but managed to walk back to his home where his wife and son insisted that he go to the emergency room of the hospital. He was later taken to St. Joseph Hospital in Parkersburg where, by reason of his injuries, he remained as a patient for eighty-two days. Thereafter he was required to be treated by his doctor from August, 1971

through September, 1973 and, in fact was still under the doctor's care at the time of the trial. In addition, he was again hospitalized from June 24, 1973 to July 15, 1973. His hospitalization and medical bills amounted to a figure in excess of $7,500.00. At the trial his doctor testified that further skin grafting would be necessary and that he would not be able to return to work for an additional eighteen to twenty-four months. A plastic surgeon, called by the power company, testified through deposition that following further surgery the plaintiff would enjoy complete recovery after three or four months. Other than this difference of opinion, the facts related are basically undisputed.

In deciding the propriety of the trial court's action in setting aside the jury's verdicts, two basic areas must be considered. First, we must decide whether the evidence adduced at the trial was sufficient to support a jury finding of liability on the part of the defendant. Second, were the verdicts so excessive as to require them to be set aside?

Preliminary to the treatment of the two above mentioned basic areas, it is necessary to consider the defendant's assertion that because the trial court, upon setting aside the verdicts, awarded a new trial, its action is entitled to peculiar respect and should not be disturbed on appeal. The defendant cites *Haggar v. Monongahela Transport Company*, 106 W. Va. 522, 146 S.E. 49 (1928) in support of the above assertion.

While we have no quarrel with the *Haggar* decision, we hasten to point out a significant distinction between that case and the one under consideration. The *Haggar* case involved a collision between a bus and an automobile. There was much conflicting testimony as to the manner in which the accident occurred which led the Court to indicate that the evidence in support of the verdict may be inconclusive. The Court said "his [plaintiff] case is not so plain and free from doubt that we can say that the ruling of the circuit court [in setting aside

the verdict for the plaintiff] is a wrongful invasion of the province of the jury." In the instant case there is no substantial conflict in the evidence. As hereinafter noted, the plaintiff's case as to the power company's negligence is clearly supported by the evidence and the ruling of the circuit court in setting aside the verdict, on the question of negligence, constitutes a wrongful invasion of the province of the jury.

So far as the question of liability of the defendant is concerned, we are of the firm opinion that the evidence clearly supports the finding of the jury and that, in that respect, the trial court was plainly wrong in setting aside such verdict.

The trial court having failed to note any reason for setting aside the jury's verdict, we have no way to know whether such action related to the question of liability, excessiveness of the verdicts, error in relation to instructions or some other reason not readily evident. It is necessary, therefore, to review each of the aforementioned questions.

The facts relating to the manner in which the plaintiff was injured are not materially disputed. Plaintiff Donald Gault was injured when he came in contact with an uninsulated, high voltage electric line of the defendant which was suspended across the plaintiff's property. In the area where the accident occurred this uninsulated electric line hung only four to six feet from the ground. The evidence reveals that the line had been installed over thirty years ago and was last actually inspected on the ground approximately six years prior to this incident. A private concern hired by the defendant company to spray the foliage along the electric lines right of way performed that function by airplane approximately eleven months before the plaintiff was so injured. Therefore, as revealed by the record, the subject line had not been inspected in any manner for at least eleven months and had not been meaningfully inspected for more than six years.

It has been held repeatedly by this Court that an electric company which operates and maintains wires charged with dangerous voltage of electricity, though not insurers against all injury caused thereby, is required to exercise a degree of care, commensurate with the dangers reasonably foreseeable. *Lancaster v. Potomac Edison Company of West Virginia*, 156 W. Va., 192 S.E.2d 234 (1972); *Sutton v. Monongahela Power Co.*, 151 W. Va. 961, 158 S.E.2d 98 (1967); *Johnson v. Monongahela Power Co.*, 146 W. Va. 900, 123 S.E.2d 81 (1961); *Maggard v. Appalachian Power Company*, 111 W. Va. 470, 163 S.E. 27 (1932). "Reasonable care and negligence are relative terms, and the degree of care required in a given case must be commensurate with the dangers to be avoided. In handling so dangerous an agency as electricity a high degree of care is not unreasonable." Point 3, Syllabus, *Morrison v. Appalachian Power Co.*, 75 W. Va. 608, 84 S.E. 506 (1915).

The duty of care owed by an electric company in the maintenance of its high voltage electric lines, as noted above, includes the duty to effectively inspect such lines. Certainly, one charged with the maintenance and operation of "so dangerous an agency as electricity" must, to fulfill its legal obligation, inspect its lines at timely intervals. Only in this manner can an electric company make the repairs necessary to avoid injuries when a line is broken or is otherwise in disrepair. In *Dunagan v. Appalachian Power Co.*, (4th Cir. 1928), 23 F. 2d 395 (4th Cir. 1928) the court, though not making a positive statement, indicated that the fact that an electric line had not been thoroughly inspected for a period of eight months, might result in liability on the part of the electric company. Reflecting on the urgency of meaningful inspections, the court said: "Companies handling electricity of the power proven here certainly owe the duty of a *thorough inspection at such intervals* as are demanded by the business." (Emphasis supplied.) *See*, 26 Am. Jur. 2d *Electricity, Gas, and Steam*, §106; 6 M.J. *Electricity*, §10.

Applying the foregoing principles to the instant case, we find that permitting a period in excess of six years to pass without a thorough inspection of high voltage electric lines is unreasonable and constitutes negligence on the part of the defendant company. The fact that this low hanging wire was in a seldom travelled area overgrown with brush does not relieve the company of its responsibility to properly inspect and maintain its lines. The subject wire was suspended over the plaintiff's property only 1,500 feet from his home and 800 feet from a road. The defendant's failure to inspect for so unreasonable a period of time is inexcusable and if the trial court set aside the jury verdict on the question of liability of the defendant it was plainly wrong.

Upon the examination of the instructions and the consideration of the defendant's objections to the court's rulings, we conclude that such court's actions did not constitute reversible error. The defendant contends that the inclusion of $200,000.00, the amount of the *ad damnum* clause, in Instruction No. 12, offered by the plaintiffs, was reversible error. We do not agree. In a recent decision this Court, while not approving the exposition of the *ad damnum* clause in instructions to the jury, expressly held that it would not reverse a case for that impropriety alone. *Jordan v. Bero*, W. Va., 210 S.E.2d 618 (1974).

The defendant's complaint relating to the court's action in giving Instruction No. 7, offered by the plaintiff, is without merit. The power company asserts that there was no evidence to show that it should have known that the wire was near the ground. The evidence clearly shows that the last ground inspection of the wire was in 1965, more than six years before this injury. Had the defendant exercised reasonable care and had caused the wire to be timely inspected, it certainly could have seen the low hanging wire and could have repaired it. There is sufficient evidence to support the instruction.

Instruction No. 7, offered by the defendant, was properly refused by the trial court. The gist of that instruction was that the injuries of Gault were caused by unusual circumstances which could not have been anticipated by the defendant company. There was no evidence of any unusual circumstances, it being clear from the record that the defendant, by proper and timely inspection, had it within its power to keep the wire in good repair.

Likewise, Instruction No. 13, offered by the defendant, was properly refused. This instruction would tell the jury that the area where the low hanging wire was situated was infrequently used and was covered with underbrush. Therefore, it would instruct the jury that it was not required to maintain a high degree of care. In fact, as revealed by the evidence, this area was near a road, was part of a pasture for cattle and, while not frequently used, Gault did enter upon it on occasions. The court did not err in refusing Instruction No. 18, offered by the defendant. That instruction would have told the jury that it should find for the defendant if a reasonable inspection would have failed to disclose any defect in the line. The evidence reveals that no reasonable inspection had been made for at least six years prior to the injury. Certainly, in that circumstance, it would be improper to permit speculation as to what a reasonable inspection would disclose.

Plaintiff Donald Gault testified that, although he had ostensibly retired and was receiving social security payments, it had been his intention to return to his trade as a pipe fitter. The defendant objected to the admission of this testimony on the ground that it was purely speculative. The trial court, reasoning that such testimony reflected a state of mind, overruled the objection. On this appeal the defendant asserts that the court erred in admitting such testimony.

The record reveals that for more than thirty years prior to this injury Donald Gault had been employed as

a pipe fitter and, as such tradesman, had continued his union membership in Plumbers and Steel Fitters Local 565. He testified that he had decided that upon the completion of the job upon which he was then working as a pipe fitter, that being in the fall of 1970, he would not engage in such work during that winter. Although he had accepted social security payments, he expressed serious doubts that he and his wife could live on that alone. The tenor of his testimony was that his retirement was more or less on a trial basis and that he intended to engage in further employment as a pipe fitter.

Plaintiff Gault further testified that he knew he could return to his trade at any time he desired and that such employment was readily available. In support of this testimony Norman Fury, business manager of the aforementioned local union, testified that there were many people (union members) who were on social security and returned to work "to what social security will permit them to work." He said that it was not unusual for union members on retirement to return to their trade. As to the availability of work, Mr. Fury noted that "[a]t the present time men who want to work could be employed"; furthermore, he stated that such situation has existed since June, 1971.

Although there is no unanimity of thought in court decisions regarding the admissibility of this type of evidence, we believe that those decisions which permit such evidence are better reasoned and should be followed. Analyzing several decisions, the court in *Lorenz v. Sowle*, 360 Mich. 550, 104 N.W.2d 347 (1960), said: "the test is not whether there is a reasonable probability, as defendant suggests, that plaintiff would have, but, rather, that he could have returned to the former employment in question, had it not been for his injury, regardless of how long it had been since he had pursued it ... when plaintiff had been deprived by injury of a wage-earning ability in certain employment, evidence that he formerly had and, but for the injury, again *could have*

*engaged in that employment* is pertinent and admissible as to the value of that which defendant has caused him to lose." (emphasis supplied.)

In *Moyer v. Merrick*, 155 Colo. 73, 392 P. 2d 653 (1964), the court held that the plaintiff had a right "to be compensated for impairment of his physical capacity and impairment of his ability to earn, regardless of whether he intended to work or not. What one's earning capacity would be if not interfered with because of the injury caused by defendant is the true test." The court further reflected that save for his injuries the plaintiff "was at liberty freely to choose to continue working at a stated wage . . . or to accept Social Security payments and limit his earnings. As a result of the impairment to his earning capacity, he was deprived of this freedom to choose to earn a full wage and was forced to accept his pension." See *National Valve & Mfg. Co. v. Wright*, 205 Okla. 565, 240 P.2d 769 (1951); *Union Traction Co. v. Taylor*, 81 Ind. App. 253, 135 N.E. 255 (1922); and *Pierce v. Seattle Electric Co.*, 83 Wash. 141, 145 P. 228 (1915).

Applying the reasoning in the foregoing decisions to the instant case, plaintiff Donald Gault, save for his injury caused by the defendant, could have freely chosen to return to work as a pipe fitter or continue on retirement and accept Social Security payments. The injury caused by the negligence of the defendant deprived him of this selective right.

The trial court's ruling of admissibility in relation to the plaintiff's testimony wherein he related an intention to return to work must be affirmed. In support of such ruling is *Blackburn v. Aetna Freight Lines, Inc.*, (3rd Cir. 1966) 368 F. 2d 345, wherein the court said: "a declaration of a state of mind or intention is admissible to prove that the declarant actually had such intention." We adhere to that principle and conclude that the plaintiff's testimony was admissible.

The defendant complains on this appeal that the jury verdicts were excessive and that the trial court correctly

set them aside and awarded a new trial. Once again, we are without knowledge of the court's reasons for setting the verdicts aside. However, it has been well settled by this Court that a jury verdict will not be set aside as excessive unless it is not supported by the evidence or is such that the amount thereof indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Jordan v. Bero*, W. Va., 210 S.E.2d 618 (1974); *Higginbotham v. City of Charleston*, W. Va., 204 S.E.2d 1 (1974); *Cowan v. One Hour Valet, Inc.*, 151 W. Va. 941, 157 S.E.2d 843 (1967); *Sargent v. Malcomb*, 150 W. Va. 393, 146 S.E.2d 561 (1966); *Winters v. Campbell*, 148 W. Va. 710, 137 S.E.2d 188 (1964).

Upon careful examination of the record we find that the amounts of the verdicts are supported by the evidence. This plaintiff was painfully injured, necessitating treatment in the hospital for eighty-two days on one occasion and approximately twenty-two days on another. In addition, he required a doctor's care as an outpatient for more than two years and, in fact, remained under the doctor's care at the time of the trial; also, there was testimony indicating a need for further skin grafting in the future. Furthermore, we find no indication of prejudice, partiality or other improper consideration on the part of the jury. In these circumstances we cannot say that the jury verdict in favor of Donald Gault was excessive.

Concerning the verdict in favor of plaintiff Irene Gault for loss of consortium, it is noted that the defendant does not question her right thereto, but charges only that the amount of the verdict is excessive. The jury was fully instructed on the plaintiff wife's right to consortium, including a definition thereof. We disagree with the defendant's assertion wherein it says that there was no evidence to support the jury finding; nor can we quarrel with the amount of the jury's verdict in that respect. That is the province of the jury and its verdict should not be set aside unless the amount thereof indi-

cates that the jury was influenced by passion, prejudice, partiality or corruption, or entertained a mistaken view of the case.

"The action of the trial court in setting aside a verdict for the plaintiff and awarding the defendant a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the defendant was committed therein." Point 7, Syllabus, *Browder v. The County Court of Webster County*, 145 W. Va. 696, 116 S.E.2d 867 (1960). *The State Road Commission v. Bowling*, 152 W. Va. 688, 166 S.E.2d 119 (1969); *Bronson v. Riffe*, 148 W. Va. 362, 135 S.E.2d 244 (1964).

Employing the language of the above quoted syllabus point, it appears that this case, as a whole, was fairly tried and that no error prejudicial to the defendant was committed at the trial.

The action of the trial court in setting aside the verdicts for the plaintiffs and awarding the defendant a new trial is therefore reversed and the verdicts for the plaintiffs are reinstated.

*Judgment reversed;*
*verdicts for the plaintiffs*
*reinstated; judgment*
*rendered by this Court.*

FLOWERS, JUSTICE, *concurring in part and dissenting in part:*

I concur in the result of the majority opinion because the evidence supports the jury's finding of liability and the amount of the verdict is properly commensurate with the damages suffered by the plaintiff.

I dissent from the implications of the fourth point of the syllabus that a plaintiff may be compensated for impairment of his ability to earn where he does not intend to work.

To the extent that syllabus point four authorizes recovery for diminution of earning capacity as a matter of unfettered right when a plaintiff, regardless of his injured status, has no intention of working, it is beyond the facts of this case. The record reflects the assertion of the plaintiff that he intended to return to work as a pipefitter and for this purpose had continued his trade union membership. On the other hand, he acknowledges that he had retired and was receiving social security benefits. The opportunity for the plaintiff to work was established by testimony indicating that a return to this particular occupation after retirement was neither unusual nor impossible and that work was available during plaintiff's period of recuperation. But for the injury, the plaintiff had the capacity to continue in the trade he had pursued for thirty years. Thus, in the instant case we have some corroboration of the expressed intention to return to work coupled with an opportunity to obtain the work and, but for the injury, a capacity to perform it. Only thus has an award of damages based upon lost wages been spared from reversal as speculatively determined.

The majority opinion admits that "there is no unanimity of thought in court decisions regarding the admissibility of this type of evidence." This lack of unanimity results from the evaluation on a case by case basis of the speculativeness of the testimony. *Compare: Lorenz v. Sowle,* 360 Mich. 550, 104 N.W.2d 347 (1960) and *Clary v. Breyer,* 194 Miss. 612, 13 So.2d 633 (1943).

Intention to work, or perhaps more aptly expressed, a desire to be industrious, is so integrally a part of earning capacity that it cannot be excluded as an evaluating factor. Recovery for diminution of earning capacity is based upon such factors as age, life expectancy, health, habits, occupation, talents, skill, experience, training and *industry* of the plaintiff as well as his prior mental and physical capacity. *Harms v. Ridgeway,* 245 Iowa 810, 64 N.W.2d 286 (1954); Annot., 18 A.L.R.3d 88, 105.

A loss of earning capacity must be established by proper and sufficient evidence. When the plaintiff has suffered a permanent injury, an instruction on diminution of earning capacity is warranted, if it is shown that this result is reasonably certain to occur and ensue from the injury. *Jordan v. Bero*, W. Va., 210 S.E.2d 618 (1974). The causal relationship between the injury and the loss of earning capacity is critical. It cannot be established with reference to evidence of present wage scales indicating what he might have earned if he had worked. Such a holding would permit a plaintiff to recover lost wages which he never intended to earn.

I am authorized to state that Justice Berry joins in the views expressed in this opinion.